### GOTTBERG *v.* UNITED STATES NAT. BANK.

(*Supreme Court, Special Term, New York County.* November, 1890.)

EXECUTORS — PLEDGE OF PROPERTY — MISAPPLICATION OF PROCEEDS — LIABILITY OF PLEDGEE.

> An executor has authority, with or without the concurrence of his co-executor, to sell or pledge the property of the estate; and, where he pledges the bonds of the estate, the mere fact that the pledgee supposed that it was dealing with the executor in his individual capacity, and that on inquiry it would have ascertained the true ownership of the bonds, will not render the pledgee liable for the misapplication of the proceeds by the executor to his own personal use, as the loan, of itself, did not effect a misappropriation of the funds of the estate, nor did it give the pledgee any notice of the intended misapplication.

The United States National Bank loaned money to John J. Louth individually on a pledge by the latter of bonds which belonged to the estate of Mendlick Gottberg, deceased, and which had come into Louth's possession as one of the executors of the estate. The bonds, which had been registered in the names of the executors, were indorsed to the bank by Louth, in the name of both executors, but without the knowledge of his co-executor. The bank acted in entire good faith, and without any knowledge of the fact that Louth was executor, as it did not see the bonds until after they had been transferred to it on the books of the corporation which issued them. This action is now brought by Julius Gottberg, Louth's co-executor, against the bank and Louth to recover the value of the bonds.

*Emmett & Robinson,* for plaintiff. *Butler, Stillman & Hubbard,* for defendant.

BARRETT, J. Where one purchases property from a trustee, knowing that the subject is trust property, he is put upon inquiry as to the trustee's power to change or vary the securities. But one who purchases property from an executor is not necessarily put upon even this inquiry. "On the death of a testator," says Mr. Perry in his work on Trusts, (section 809,) "the personal estate vests wholly in the executor, and, in order that he may execute his office, the law permits him, with or without the concurrence of any co-executor, to sell or mortgage by actual assignment or equitable deposit, with or without

a power of sale, all or any part of the personal assets, legal or equitable." For this proposition numerous authorities are cited in the notes to the fourth edition, and the principle may be said to be well established. The distinction' between a trustee and executor was referred to in *Duncan* v. *Jaudon*, 15 Wall. 175. In the former case, namely, that of a trustee, Justice DAVIS observed that "there is no presumption of a right to sell, as there is in the case of an executor." And in the same case below, reported under the name of *Jaudon* v. *Bank*, 8 Blatchf. 438, Justice BLATCHFORD observed that "a trustee stands on a different footing from an executor or administrator, or even a guardian, in many respects. A trustee presumptively holds his trust property for administration, and not for sale." Where, then, the securities show upon their face that they are trust property, the purchaser is put upon inquiry as to the power of the trustee to vary or change such securities. In the case of an executor, however, this power is presumed as a necessary incident to the performance of his duties, and the purchaser or pledgee is protected if he pays or advances his money in good faith, and without knowledge of any intended misapplication by the executor. What neither a trustee nor an executor can do without peril to the purchaser or pledgee is to dispose of or pledge his *cestui que trust's* or testator's assets in payment of or as security for a debt of his own. *Field* v. *Schieffelin*, 7 Johns. Ch. 150; *Shaw* v. *Spencer*, 100 Mass. 382; *Petrie* v. *Clark*, 11 Serg. & R. 377: In *Field* v. *Schieffelin*, Chancellor KENT examined all the English cases up to that date, (1823,) and his conclusion was that they all agreed that the purchaser is safe; "if he is no party to any fraud in the executor, and has no knowledge or proof that the executor intended to misapply the proceeds, or was, in fact, by the very transaction, applying them to the extinguishing of his own private debt." "The great difficulty has been," continued the chancellor, "to determine how far the purchaser dealt at his peril, when he knew, from the very face of the proceeding, that the executor was applying the assets to his own private purposes, as the payment of his own debt. The latter and the better doctrine is that in such a case he does buy at his peril; but that, if he has no such proof or knowledge, he is not bound to inquire into the state of the trust, because he has no means to support the inquiry, and he may safely repose on the general presumption that the executor is in the due exercise of his trust." The rule was stated by Chief Justice TANEY, in *Lowry* v. *Bank*, Taney, 310, as follows: "If a party, dealing with an executor, has at the time reasonable ground for believing that he intends to misapply the money, or is in the very transaction applying it to his own private use, the person so dealing is responsible to the persons injured." And the same rule was put in another form by the house of lords in 1861 in *Walker* v. *Taylor*, 4 Law T. (N. S.) 845: "Where an executor parts with any portion of the assets of the testator, under such circumstances as that the purchaser must be reasonably taken to know that they were sold, not for the benefit of the estate, but for the executor's own profit, the result is that the purchaser holds the assets as if he were himself, in respect of those assets, the executor." See, also, *Leitch* v. *Wells*, 48 N. Y. 585; *Goodwin* v. *Bank*, 48 Conn. 550; Cook, Stock, § 474, and cases there cited. The present case is analogous to *McLeod* v. *Drummond*, 14 Ves. 352, 17 Ves. 152, which was carefully analyzed by Chancellor KENT in *Field* v. *Schieffelin*. There was, in *McLeod* v. *Drummond*, a pledge by the executor of the testator's bonds upon advances of money. The bill, as here, was by a co-executor, and it was dismissed by the master or the rolls, and the decree was affirmed on appeal to the lord chancellor. The master of the rolls said he had found no case, where the money had been advanced at the time to the full value of the assets, that it was ever called back. Lord ELDON, on the appeal, declared that, on a sale by the executor for money advanced at the time, the vendee could never be affected by proving the executor's intention at the time to misapply the money. The third person, if there

was no more in the transaction, would be justified in assuming that the sale was for those purposes, for which the law gives the executor the power of sale. The conclusion, in substance, was that, to charge the purchaser, he must have had direct evidence that the advance was not for a purpose connected with the administration of the assets, but for a different purpose, and that the executor was going to misapply the fund. Both upon principle and authority, then, the plaintiff in the present case must fail. We will assume that the bank was bound to notice the manner in which the bonds were registered. What then? It simply advanced money to one of the executors upon the collateral security of the testator's bonds registered in the name of the two executors. There was absolutely nothing more than this in the transaction. It is true that in form the advance was to John J. Louth personally. That is, he did not add the descriptive word "executor" to his signature to the stock note, nor did the bank add such word to the name of Louth as the payee of its check, nor did Louth inform the bank that he desired the loan for purposes of the estate. But all this was implied upon the face of the transaction, and the bank is certainly not chargeable because its president supposed that he was dealing with Louth personally, when, if he had noticed the manner in which the bonds were registered, what transpired need not have been changed even in matter of detail; for the debt contracted by Louth as executor was in law personal, and it would have been just as much personal whether he added to his signature to the stock note his executorial description or not. The form of the transaction, therefore, was unobjectionable. It appropriately effected a loan to the estate, and, so far as it spoke at all, it spoke of a loan to the executor for the purposes of the estate. It did not of itself effect a misappropriation of the funds of the estate, and it certainly gave no hint to the bank of an intended misappropriation. On the main question there should be judgment for the defendant, but as the bonds have been sold by the bank to pay the loans made to Louth, and as upon such sales there remains a surplus in the hands of the bank, the plaintiff may have judgment therefor, without costs.