# Farmers & Merchants Bank *v.* Sanford.

## *Bill For Inter-Pleader.*

(Decided March 2, 1907.   43 So. Rep. 226.)

1.  *Administrators; Individual Debts; Application of Assets of Estate.*—An administrator has no authority to apply choses in action belonging to an estate in his name to the payment of his individual debt, and one who accepts them as security for or a payment of such an individual debt has full notice of his abuse of duty and is answerable for them.

2.  *Same; Money Advanced to Administrator; Liability. of Estate.*— Where an administrator pledges notes belonging to the estate as security for his individual debts, which debts are afterwards paid, and the transferee of such notes is authorized by the administrator to hold them as security for money advanced to the administrator in his representative capacity, such transferee is entitled to recover from the estate the money advanced on the security of such note, although the notes were not executed by the administrator in his representative capacity; since an administrator has authority to pledge notes or other choses in action to secure the debts of or borrow money for the estate and where he does so pledge them as security for a payment or subsequent consideration the pledgee is not required to follow the money lent and see that it is applied to the benefit of the estate.

3.  *Same; Procuring Money For The Estate.*—An administrator is not prevented from negotiating for or procuring money for the estate outside of the jurisdiction or state in which his letters are granted.

APPEAL from Clay Chancery Court.

Heard before Hon. W. W. WHITESIDE.

Bill by the Farmers & Merchants Bank of Abbott, Tex., for interpleader in proceedings for the settlement of the estate of J. D. Howell, deceased, of which J. B. Sanford was administrator. From a decree dismissing the bill, orator appeals. Reversed and remanded.

[Farmers & Merchants Bank v. Sanford.]

This was a bill filed by the Farmers' & Merchants' Bank, a partnership, for inter-pleader in the cause pending in the Clay chancery court. The case made by the bill is that at a time when W. S. Howell, who resided in the state of Texas, was the administrator of the last will and testament of John D. Howell, deceased, and was acting as said administrator, he indorsed certain notes, which are attached as an exhibit to the bill, to orators, in consideration of money presently to be advanced and money agreed to be advanced by orators to said J. D. Howell; that orators were engaged in the banking business at Abbott, Tex., and that said Howell had an account with orators, which account was balanced and closed on the 13th day of August, 1904; that on the 17th day of August, 1904, W. S. Howell desired to open an account with orators, and the notes above referred to were then in possession of orators, indorsed by said W. S. Howell, executor, and orators agreed with said Howell that, in consideration of his permitting orators to hold said notes above referred to, orators would advance to said Howell such sum of money as they thought would be secured by said notes, and orators aver that this arrangement and agreement was perfected with said W. S. Howell, who agreed that orators could hold the notes as security for the indebtedness that he should create to orators in the future; that orators held the notes, and have continued to hold the same, to the present time, and on faith of the agreement with W. S. Howell they began and advanced the said Howell, on and after the 17th day of August, 1904, and from time to time thereafter to the 1st of May, 1905, advanced to Howell the sum of $2,137.28, all of which was done in strict compliance with the agreement made by Howell and orator on the 17th day of August, 1904. It is averred that on May 22, 1905, the account of said Howell was closed by a note (the note is made an exhibit to the bill), and at the time the note was executed it was agreed that orator should not relinquish any right or claim that they had to the notes above referred to, but that they should continue to hold the same as security for the indebtedness evidenced by Howell's note. It is further alleged that in 1905 $835.90 was paid by Howell on said notes, and

at another time in the same year a payment of $80.51 was made, leaving a balance due of $1,450. It is then alleged that Howell . was removed as administrator, upon the estate being removed into the chancery court, and that J. B. Sanford was appointed administrator de bonis non of the estate of J. D .Howell with the will annexed. It is averred that said Sanford has collected on the notes above referred to, including interest, the sum of $997.62, when in truth and in fact the title to said notes was in orator, and the right to collect the same belonged to orator, and that said Sanford was without authority from orators to collect said money. It is further alleged that on January 24, 1906, J. W. House, one of the parties, executing one of the notes above referred to, filed his petition in the Clay chancery court, alleging, among other things, that the said note was claimed by orators, and asking the court to determine to whom he should make payment of the note. The prayer is that Sanford and W. S. Howell be made parties respondent to the bill of complaint, and that this petition be consolidated with and made a part of the case pending in the chancery court for the settlement of the estate of J. D. Howell, deceased, and that orators be allowed to inter-plead in said cause and assert and establish their claim to said money collected by J. B. Sandford, and to assert and establish their claim to said notes, and to such other and further relief. On motion of Sanford, the bill and petition was dismissed for want of equity.

D. H. RIDDLE, for appellant.—An executor or administrator has the full legal title to the choses in action of the deceased, and is charged with the duty of collecting and reducing them to possession; he may transfer, release, compound or discharge them as fully as if he was the absolute owner, subject only to his liability to answer, to creditors, .distributees, or legatees, for his improvidence in the exercise of his power.—*Chandler v. Chandler*, 87 Ala. 300; 3 Mayfield's Digest, Sec. 659, and authorities there cited.—*Woolfolk v. Sullivan*, 23 Ala. 548. No bona fide dealing with him can be impeached and no remedy can be pursued against those

to whom he may release or with whom he may compound or from whom he may accept satisfaction unless fraud and collusion can be imputed to them.—Authorities supra. The complainants had a right to presume that the executor was discharging his duty in the administration of the estate.—*Warring v. Lewis,* 53 Ala. 630. The only question, therefore, that can be raised is the bona fides of the dealings of the complainants.— *VanHoose v. Bush,* 54 Ala. 353; *Swoope v. Trotter,* 4 Port. 27; Perry on Trusts, Sec. 225.

RICHARD B. KELLY, for appellee.—There are two reasons why a transfer of the notes by Howard, the executor, did not operate to invest complainants with title to said notes: 1. The transfer was made in the state of Texas while said Howard was appointed executor by the probate court of Clay county, Alabama.—*Vaughan v. Northrup,* 15 Peters, 1; *Hatchett v. Berry,* 65 Ala. 39; *Parsons v. Lyman,* 20 N. Y. 112; *Vroom v. Van Horn,* 10 Paige, 549; *Doolitte v. Lewis,* 7 John's Chancery, 47; *Maxwell v. Dickens,* 1 John's Ch. 153; *Brownlee v. Lacwood,* 20 N. J. Eq. 339; *Barcliffe v. Trece,* 77 Ala. 528, 2. Said transfer was made to secure the individual debt of Howell.—*Rogan v. Zook,* 86 Ind. 302; *Latz v. Miller,* 109 Ind. 302; *Leachman v. Presser,* 34 Am. Dec. 121, *Scott v. Surles,* 45 Am. Dec. 317; *Shaw v. Spencer,* 100 Mass. 382.

ANDERSON, J.—"While the power of an executor or administrator, over the choses in action in his hands for administration, is of necessity large ,and may be dealt with generally as if he was the owner of them, he is without authority to apply them in payment of his individual debts. Whoever accept them as security for or in payment of such debts has full notice of the abuse his fiduciary power and duty, and must be made answerable for them."—*Shelton v. Carpenter,* 60 Ala. 211; *Swoope v. Trotter,* 4 Port. 27; *Chandler v. Chandler,* 87 Ala. 300, 6 South. 153. In the cases of *Shaw v. Spencer,* 100 Mass. 382, 97 Am. Dec. 107, 1 Am. Rep. 115, and *Smith v. Ayer,* 101 U. S. 320, 25 L. Ed. 955, the pledgee of choses in action by the administrator or trus-

tee was held not to be a bona fide purchaser, because pledged to secure an antecedent individual debt of the trustee. But the authorities do not prevent the pledging of choses in action to secure the debts of or borrow money for the estate, and there is a broad distinction between pledging notes of the estate to secure an antecedent debt of the trustee and pledging them as security for a present or subsequent consideration. In the latter case the pledgee is not required to follow the money lent and see that it is applied to the benefit of the estate.

In the case of *Gottberg v. United States National Bank* (N. Y.) 13 N. Y. Supp. 841, a case quite similar to the one at bar, the court said: "The present case is analogous to *McLeod v. Drummond*, 14 Ves. 352, 17 Ves. 152, which was carefully analyzed by Chancellor Kent in *Field v. Schieffelin*. There was, in *McLeod v. Drummond*, a pledge by the executor of the testator's bond upon advances of money. The bill, as here, was by a coexecutor, and it was dismissed by the Master of the Rolls, and the decree was affirmed on appeal to the Lord Chancellor. The Master of the Rolls said he had found no case, where the money had been advanced at the time to the full value of the assets, that it was ever called back. Lord Eldon, on the appeal, declared that, on a sale by the executor for money advanced at the time, the vendor could never be affected by proving the executor's intention at the time to misapply the money. The third person, if there was no more in the transtion, would be justified in assuming that the sale was for those purposes for which the law gives the executor the power of sale. The conclusion, in substance, was that, to charge the purchaser, he must have had direct evidence that the advance was not for a purpose connected with the administration of the assets, but for a different purpose, and that the executor was going to misapply the fund. Both upon principle and authority, then, the plaintiff in the present case must fail. We will assume that the bank was bound to notice the manner in which the bonds were registered. What then? It simply advanced money to one of the executors upon the collateral security of the testator's bonds, registered in the name of the two executors. There was absolutely noth-

ing more than this in the transaction. It is true that in form the advance was to John J. Louth personally; that is, he did not add the descriptive word 'executor' to his signature to the stock note, nor did the bank add such word to the name of Louth as the payee of its check, nor did Louth inform the bank that he desired the loan for the purpose of the estate. But all this was implied upon the face of the transaction, and the bank is certainly not chargeable because its president supposed that he was dealing with Louth personally, when, if he had noticed the manner in which the bonds were registered, what transpired need not have been changed even in matter of detail; for the debt contracted by Louth as executor was in law personal, and it would have been just as much personal, whether he added to his signature to the stock note his executorial description or not. The form of the transaction, therefore, was unobjectionable. It appropriately effected a loan to the estate, and, so far as it spoke at all, it spoke of a loan to the executor for the purposes of the estate. It did not of itself effect a misappropriation of the funds of the estate, and it certainly gave no hint to the bank of an intended misappropriation."

In the case at bar the bill avers that the notes of the estate were transferred by W. S. Howell to secure a debt contracted by him a few days previous, and, if the complainants were trying to subject the proceeds of the notes to the payment of this debt, they would doubtless not be bona fide purchasers, and their claim could not prevail; but the bill avers that this debt was settled, and the executor, W. S. Howell, authorized them to hold the notes to secure another debt for money presently and subsequently advanced, being the one for which they claim the proceeds of the notes. It is true the note given the complainants was not executed by W. S. Howell in his executorial capacity; but that of itself was not sufficient to inform the complainants that the money was not obtained by him as executor and for the benefit of the estate. We know of no law that prevents an executor from negotiating for or procuring money for the benefit of the estate beyond the border of the state in which his letters were granted.

[Bolen v. Allen, Sheriff, et al.]

The chancellor erred in dismissing the bill or petition for want of equity, and the decree of the chancery court is reversed, and the cause is remanded.

Reversed and remanded.

DOWDELL, SIMPSON, and MCCLELLAN, JJ., concur.