EDWIN B. GOODELL, substituted administrator with the will annexed, complainant and appellant,

*v.*

G. ROWLAND MONROE et al., defendants and respondents.

[Submitted December 11th, 1916. Decided March 5th, 1917.]

1. Apart from the right of retainer, and the right of reimbursement for moneys in fact advanced to the estate in payment of its debts, an executor or administrator has no right to assign the assets of the estate to himself.

2. An executor or administrator cannot purchase property of the estate which he represents except with the consent of the beneficiaries, and such a purchase is voidable at their option.

3. A bank which made a loan to one Taylor, *individually,* on Taylor's *individual* note, and took, as collateral security, an assignment of a bond and mortgage, property of the estate of which Taylor was executor, cannot hold such bond and mortgage, as against the estate, when the bank knew at the time it made the loan to Taylor, individually, that the bond and mortgage had been assigned by Taylor, as executor, to *himself individually,* without consideration, and when the bank made the loan, by its cashier's check drawn to the order of Taylor, *individually,* and the endorsement on that check, on its presentation for payment, showed that it had been deposited to Taylor's *personal* account, and not to the account of the estate, and when the bank, nevertheless, paid the check.

4. An executor or administrator has no authority to pledge personalty belonging to the estate to secure his own debts.

5. Although an executor or administrator has no authority to pledge the personalty of the estate for his own debts, such pledge is valid as against the estate if it is based on a valuable consideration, and the pledgee has no notice, actual or constructive, that the executor or administrator is making the pledge to secure his own debts.

6. Where property belonging to the estate of a deceased person is pledged by the executor or administrator for his own use, and the pledgee has actual or constructive notice of that fact, the pledge is not valid as against the estate.

7. Where, on the face of the transaction, it is evident that the executor or administrator sells or pledges securities which belong to the estate as his own, and not as executor or administrator, the purchaser or pledgee deals with him at his own risk, and the purchaser or pledgee will be liable in case of loss to the estate.

8. Where a bank loans money to one who is the executor of an estate, on his individual note, and takes as collateral security a bond and mortgage known to the bank to be assets of the estate, upon the understanding that he would turn the money over to the estate, the transaction gives rise to a species of equitable guaranty by the bank that its participation should not result in loss to the estate, and to that extent the bank is bound to see to the application of the moneys loaned. The duty that is controlling is that expressed in the maxim, "Equity regards as done that which ought to have been done," which means that where an obligation rests upon a person to perform an act, equity will treat the person in whose favor the act should be performed as clothed with the same interest and entitled to the same rights as if the act were actually performed.

On appeal from a decree of the court of chancery advised by Vice-Chancellor Stevens, whose opinion is reported in *86 N. J. Eq. 18.*

*Mr. Edward M. Colie,* for the appellant.

*Messrs. Wolber & Blake,* for the respondents.

The opinion of the court was delivered by

TRENCHARD, J.

On June 1st, 1911, Lewis P. Taylor and Andrew S. Taylor, as executors of the estate of Anna A. Burnett (who died in 1907), sold a piece of real estate, of which she died seized, to James J. Fitzsimmons, and took from him in part payment therefor a bond and purchase-money mortgage for $5,000.

On the same day Fitzsimmons conveyed the premises so sold and mortgaged to Emile C. Bataille and wife.

Bataille, who made the bargain for and who took title to this property, was the president of the American National Bank, the defendant in this case.

The mortgage fell due June 1st, 1912, and shortly thereafter, Andrew S. Taylor (his co-executor being then deceased) went to Bataille, the president of the bank, and sought to have the mortgage paid, saying that the legatees of his testatrix were clamoring for the money. Bataille, for some reason, was unable or unwilling to pay the mortgage, and suggested a loan by the

bank to the estate. Taylor said that he "could not borrow money as an executor, but that he would do so in his individual capacity and turn the money over to the estate," and Bataille thereupon referred Taylor to Mr. Monroe, the bank's attorney. Taylor went to Mr. Monroe and said that it had been arranged between himself and Bataille that the bond and mortgage should be used as collateral security to obtain a loan from the bank, and that, as he "didn't feel that he had any authority to pledge the credit of the estate" by giving a note as executor, he proposed assigning the bond and mortgage to himself, individually, and then giving a note to the bank for $5,000 made by himself, individually, and assigning the bond and mortgage as collateral security for its payment to Mr. Monroe as trustee for the bank. This plan was carried through. Taylor assigned the bond and mortgage to himself, individually, and then, individually, assigned them to Mr. Monroe as trustee. The bank then made the loan by its cashier's check for $5,000, drawn to the order of Taylor, individually, and took his personal note, and received the bond and mortgage and the assignments as collateral security. The endorsement on that check, on its presentation for payment, showed that it had been deposited in another bank to Taylor's personal account and not to the account of the estate. The check was, nevertheless, paid by the defendant bank on presentation. Thereafter Taylor applied only $1,100 of the money thus received to the payment of legacies, using the remainder for his own purposes. Some time afterward he was removed as executor because of his fraudulent dealings with the funds of the estate, and Mr. Goodell, the present complainant, was appointed administrator with the will annexed. Not finding the bond and mortgage among the assets turned over to him, he traced them to the possession of the bank, and upon being refused their return, filed the present bill to compel their surrender, upon the ground that the whole transaction between Taylor and the bank was illegal and void so far as the estate which the complainant represents is concerned.

The learned vice-chancellor considered that the general rule that a person who takes a mortgage from an executor is not

bound to see to the application of the purchase-money, was applicable to the present case.

We are of the opinion that such conclusion was unsound.

Leaving out of account the right of retainer, and the right of reimbursement for moneys in fact advanced to the estate in payment of its debts (with which we are not now concerned), an executor or administrator has no right to assign the assets of the estate to himself. *Hunt* v. *Smith, 58 N. J. Eq. 25.*

He cannot even purchase the property of the estate except with the consent of the beneficiaries, and such a purchase is voidable at their option. *Mulford* v. *Minch, 11 N. J. Eq. 16.*

The bank is chargeable with knowledge of these legal rules. It knew, then, that the assignment of the bond and mortgage by Taylor, as executor to himself, individually, without any consideration whatsoever passing to the estate, was a violation of his duty to the estate, and would be declared to be of no effect, if submitted to judicial scrutiny.

The question, therefore, is, whether the bank, which made the loan to Taylor, *individually,* on Taylor's *individual* note, and took, as collateral security for that note, an assignment of the bond and mortgage, property of the estate of which Taylor was surviving executor, can hold the bond and mortgage thus pledged as collateral security, as against those who are by the will entitled to the estate, when the bank knew at the time it made the loan to Taylor, individually, that the bond and mortgage had been assigned by Taylor as executor to *himself, individually,* without consideration, and when the bank made the loan, by its cashier's check drawn to the order of Taylor, *individually,* and the endorsement on that check; on its presentation for payment, showed that it had been deposited to Taylor's *personal* account, and not to the account of the estate, and when the bank, nevertheless, paid the check and consummated the transaction.

We are constrained to think that such question must be answered in the negative.

The transaction in question was so planned and executed as to make it appear on the face of things that the estate sold the bond and mortgage to Taylor, and that Taylor pledged them to the bank to secure the money which he borrowed in his indi-

vidual capacity, and was to turn over to the estate. But since the estate did not get the money, so far as the transaction be regarded as a sale, it was invalid as against the estate.

Taking the transaction, so far as the estate is concerned, as a pledge, it is likewise invalid as against the estate.

It is well settled that an executor or administrator has no authority to pledge personalty belonging to the estate to secure his own debts. *Prall* v. *Tilt, 28 N. J. Eq. 479; Farmers, &c., Bank, v. Sanford, 150 Ala. 195; Boeger v. Langenberg, 42 Mo. App. 7; Linton's Appeal, 14 W. N. C. (Pa.) 450.*

It is true, that, although an executor or administrator has no authority to pledge the personalty of the estate for his own debts, such a pledge is valid as against the estate if it is based on a valuable consideration, and the pledgee has no notice, actual or constructive, that the executor or administrator is making the pledge to secure his own debts. *Prall* v. *Tilt, supra; Sutherland* v. *Brush, 7 Johns. Ch. (N. Y.) 17.*

But where property belonging to the estate of a deceased person is pledged by the executor or administrator for his own use, and the pledgee has actual or constructive notice of that fact, the pledge is not valid as against the estate. *Prall* v. *Hamil, 28 N. J. Eq. 66; Field v. Schieffelin, 7 Johns. Ch. (N. Y.) 150; Petrie v. Clark, 11 Serg. & R. 386.*

The English cases up to the time of the decision of Chancellor Kent in *Field* v. *Schieffelin, supra,* are all reviewed in his opinion, and (at *p. 160*) the chancellor says:

"I have thus looked pretty fully into the decisions in the analogous case of a purchase from an executor of the testator's assets; and they all agree in this, that the purchaser is safe, if he is no party to any fraud in the executor, and has no knowledge or proof that the executor intended to misapply the proceeds, *or was, in fact, by the very transaction, applying them to the extinguishing of his own private debt.* The great difficulty has been to determine how far the purchaser dealt at his peril when he knew, from the very face of the proceedings, that the executor was applying the assets to his own private purposes, as the payment of his own debt. *The latter and better doctrine is, that in such a case, he does buy at his peril;* but that if he has no such

proof or knowledge, he is not bound to inquire into the state of the trust, because he has no means to support the inquiry, and he may safely repose on the general presumption that the executor is in the due exercise of his trust."

In *Field* v. *Schieffelin* the facts were that the guardian assigned the mortgage as guardian to one W. J. S. for the full amount of the principal and interest then due, and there was nothing in anywise irregular in the transaction. On these facts the chancellor found that there was no proof of a *devastavit* and that the assignment was in all respects regular. There was not, as here, an assignment to the fiduciary personally and the pledge of a bond and mortgage to secure his personal note nor the presentation of a check for payment showing, on its face, a misappropriation of the fund. Had such facts appeared, no doubt the decision would have been contrary to that reached. It will be noted that (at *p. 161*) the chancellor uses the language: "There is no ground for an inference of fraud or *for a charge of gross negligence."*

In *Petrie* v. *Clark, 11 Serg. & R. 377*, Mr. Justice Gibson, after careful consideration, states the law to be as follows:

"In chancery, however, the executor's interest is purely fiduciary; and the law exacts from those dealing with him, with full knowledge of his representative character, the most perfect good faith. Now, the assets are a fund in his hands, not for the payment of his own debts, but the debts of the testator, and the legacies bequeathed in the will; and where the assignee knows at the time that he is receiving his debt out of a fund which is not the property of the person paying, but which is appropriated to the payment of other debts, that alone is a circumstance of suspicion that ought to put him on inquiry as to the propriety of the transaction. An executor may, in some cases, with strict propriety, convert the assets to his own use, *as where he has paid debts of the testator to the value, with his own money;* but where the assignee finds him, in the first instance, applying the assets out of the ordinary course of administration, it may bear on argument, whether he does not *take upon himself the risk* of the executor's right to apply them, or of his ability to replace them, if they were improperly withdrawn from the fund; and later cases have,

I think, gone this length. It is no answer to say, that the executor may sell the goods and pay his debt with the price, if the creditor knew that the payment made under these circumstances would prejudice the creditors or legatees, he would be a party to the *devastavit,* and liable to refund; for money where it is received *mala fide* may be followed as readily as a chattel."

We think that the principles enunciated in these opinions, one by Chancellor Kent and the other by Chief-Justice Gibson, are sound.

The true rule is, that where, on the face of the transaction, it is evident that the executor sells or pledges securities which belong to the estate as his own, and not as executor, the purchaser or pledgee deals with him at his own risk, and the purchaser or pledgee will be liable in case of loss to the estate.

Now, in the present case, the bank knew, from the very face of the proceeding, and otherwise, that Taylor was pledging securities of the estate to secure his individual note; it knew that the securities had been transferred from Taylor, executor, to Taylor, individually, without consideration, and for the express purpose of preventing the transaction from speaking as a loan to the executor for the purposes of the estate. Both the bank and Taylor were at great pains throughout to earmark the transaction, in every way, as a transaction between the bank and Taylor as an individual, and to expressly negative the idea of a transaction with Taylor as executor. This arrangement was more than a mere matter of form. It amounted, substantially, to an arrangement between Taylor and the bank by which the bank agreed with Taylor that Taylor should convert the bond and mortgage belonging to the estate to his own use for the purpose of obtaining a loan from the bank as an individual, trusting to Taylor to pay the estate the money he owed it for the conversion of the bond and mortgage.

Clearly, the bank put through this transaction at its own risk, and, since the estate received but a small portion of the proceeds of the bond and mortgage, the bank is responsible for the balance. The transaction is deemed to have given rise to a species of equitable guaranty by the bank that its participation in that

irregular dealing with the assets of the estate should not result in loss to the latter, and to that extent, the bank was bound to see to the application of the money loaned. How this guaranty should be worked out was at the will of the bank, provided the equitable results be obtained. It might have been by making its check to the executor. as such, or by otherwise assuming the responsibility for the application of the money to the purposes of the estate—but however done, the duty that was controlling is that expressed in the maxim "Equity regards as done that which ought to have been done," which means that where an obligation rests upon a person to perform an act, equity will treat the person in whose favor the act should be performed as clothed with the same interest and entitled to the same rights as if the act were actually performed. *Shipman* v. *Lord, 58 N. J. Eq. 380; Armour* v. *Connolly, 63 N. J. Eq. 788.*

This duty to see to it that the estate did not suffer by reason of the bank's participation in the irregular transaction the bank failed to perform. It made no effort to see to a proper application of the funds. It did not draw the check to the order of the estate, nor did it, after making the check to Taylor, individually, have him endorse it over to the estate, but, on the contrary, it consummated the transaction by paying the check, with actual notice by the endorsement that Taylor was appropriating the money to his own personal account.

The cases cited by the respondent are not to the contrary.

The question, in *Foster* v. *Dey, 27 N. J. Eq. 599,* was, whether under the facts in that case the purchaser of a mortgage from the trustee, as such, *was bound to see to the application of the purchase-money.*

The transaction involved the *sale* of a mortgage by a trustee who received the consideration of the sale (at *p. 604*) ; concluding his opinion, Mr. Justice Reed says:

"The trustee so having the power of sale, and it having been made in what I conceive to be no *unusual* manner, or at no obvious sacrifice. I do not think any knowledge can, from it, be charged upon Foster of the intended disposition by Dey of the trust fund received from the sale."

There was nothing whatever irregular in the transaction, nor anything to charge the purchaser with notice. The case is, therefore, no authority for the respondent in the present case.

*Gottberg* v. *United States National Bank, 13 N. Y. Supp. 841*, is not applicable to the present case, as the facts are fundamentally dissimilar. In that case the bank had no knowledge that the estate had any interest in the security; while in the present case the bank knew full well that the security belonged to the estate.

*Carter* v. *Manufacturers National Bank of Lewiston, 71 Me. 448*, is not in point, the facts varying in numerous fundamental particulars from those in the present case. The facts in the *Carter Case* seem to be these: John G. Cook was executor of one Redington. Cook had fifty shares of stock transferred into the name of Cook, executor. He then "made a loan from the defendant bank of $500, giving a note therefor; that at the time of procuring said loan Cook transferred the fifty shares of stock to the bank as collateral security for the loan; *that Cook assumed to transfer the stock and made the loan in his capacity as executor;* that the money was loaned in good faith by the defendant and upon the statement made by Cook that the same was wanted in the settlement of the estate." Thus the transfer of the stock was directly from Cook, executor, to the bank, while the assignment of the bond and mortgage in the present case was not from Taylor, executor, directly to the bank, but from Taylor, executor, to Taylor, individually, and then from Taylor, individually, to the bank.

There is another difference between the cases. In the *Carter Case* the court said: "The case finds 'that the money was loaned in good faith by the bank and upon the statement made by Cook that the same was wanted in the settlement of the estate.' The presumption is that he was acting faithfully. There is no evidence to the contrary, and the presumption must stand." From this it would seem that Cook never misappropriated the proceeds, but acted honestly throughout. The action was one of conversion, brought, perhaps, in an effort by the estate to avoid the loss resulting from a decrease in the value of the stock.

In *Ashton* v. *Atlantic Bank, 3 Allen 217*, the facts were "that

the defendants had no notice or knowledge of the facts relating to the trust except what appeared on the face of the notes and certificate," and that "the facts apparent on the face of the notes *were not sufficient to establish the position that the purchaser knew the trustee was about to commit a breach of trust."*

In the later case of *Shaw* v. *Spencer, 100 Mass. 382,* commenting on the decision in *Ashton* v. *Atlantic Bank,* the court said: "In short, the court came to the conclusion that the act of the trustee was itself lawful in *that particular case,* and that his fraud consisted only in the misuse of the money when obtained. If this was true, of course, the purchaser was not bound to see to the application of the purchase-money."

This reference to the opinion in *Ashton* v. *Atlantic Bank* indicates that the latter case is one depending upon the special finding of fact by the court and not illustrative of the general doctrine.

The *Ashton Case,* however, illustrates the effort always made by the courts to protect those properly dealing with negotiable paper, and at the same time to protect estates. The opinion (at *p. 221*) contains the following:

"We are aware of the great vigilance with which courts of equity watch over trust funds, and that all who fraudulently aid in their misappropriation to the injury of the *cestuis que trust,* by becoming purchasers or holders of such securities, do it at their peril. But while the courts are thus vigilant in protecting trust property, they are alike bound to protect those who in good faith have received negotiable paper, negotiated before maturity, and endorsed by the payee, and have upon such negotiable paper thus transferred to them advanced the whole value thereof, in the ordinary course of business."

The decree below will be reversed and the record remitted to the court of chancery, to the end that it be decreed that the bond and mortgage be assigned by the bank to the complainant on payment by the complainant to the bank of $1,100 which was applied by Taylor to the benefit of the estate out of the $5,000 loan to him individually.

The complainant is entitled to costs in this court and in the court of chancery.

*For affirmance*—None.

*For reversal*—THE CHIEF-JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, BLACK, WHITE, HEPPENHEIMER, WILLIAMS, GARDNER—13.