(75 South. 168)

BANK OF GUNTERSVILLE v. UNITED STATES FIDELITY & GUARANTY CO.  (8 Div. 978.)

(Supreme Court of Alabama.   April 5, 1917.)

1. GUARDIAN AND WARD ⬅43 — MANAGEMENT OF PERSONALTY—DISPOSAL.

A guardian may dispose of his ward's personalty, including choses in action, without an order of court.

[Ed. Note.—For other cases, see Guardian and Ward, Cent. Dig. §§ 173, 186–188, 190, 191.]

2. GUARDIAN AND WARD ⬅43—DISPOSAL OF PERSONALTY—RIGHTS ACQUIRED.

A person receiving property from a guardian is not required to see that its proceeds are used for the ward's benefit, although he is lia-

ble if he knows the guardian is making improper use of the property.

[Ed. Note.—For other cases, see Guardian and Ward, Cent. Dig. §§ 173, 186–188, 190, 191.]

3. GUARDIAN AND WARD ⬅45—PLEDGE OF WARD'S PERSONALTY—RIGHTS ACQUIRED.

Where a guardian pledges his ward's property for a present loan, a pledgee without notice to the contrary may assume the transaction is proper.

[Ed. Note.—For other cases, see Guardian and Ward, Cent. Dig. §§ 202–205.]

4. CORPORATIONS ⬅123(7)—STOCK CERTIFICATE—PLEDGE.

An equitable title is passed to a pledgee by the simple delivery of a stock certificate.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 508.]

5. GUARDIAN AND WARD ⬅45—PLEDGE OF WARD'S PERSONALTY—RIGHTS ACQUIRED.

Where a guardian pledges shares of stock belonging to his ward as security for a loan, a pledgee without knowledge of the actual ownership secures an unimpeachable title to the stock and its dividends.

[Ed. Note.—For other cases, see Guardian and Ward, Cent. Dig. §§ 202–205.]

6. PAYMENT ⬅5—JOINT OBLIGEES.

A debtor may discharge his debt by payment to one of several joint obligees, although some of them are minors.

[Ed. Note.—For other cases, see Payment, Cent. Dig. §§ 7, 8.]

7. GUARDIAN AND WARD ⬅174—INDEMNITY BOND—LIABILITY.

A guardian's surety is not liable for funds received by the guardian in his individual capacity.

[Ed. Note.—For other cases, see Guardian and Ward, Cent. Dig. §§ 590–599.]

8. SUBROGATION ⬅7(4) — VOLUNTARY PAYMENT.

A guardian's surety is not entitled to subrogation for payment of the guardian's personal obligations for which it was not legally liable.

[Ed. Note.—For other cases, see Subrogation, Cent. Dig. §§ 22, 83, 92.]

Appeal from Chancery Court, Marshall County; James E. Horton, Jr., Chancellor.

Bill by the United States Fidelity & Guaranty Company against the Bank of Guntersville. From a decree overruling demurrers to the bill, respondent appeals. Reversed, rendered, and remanded.

The bill shows that complainant was surety on the bond of one J. G. Pittman as guardian for his five brothers and sisters under appointment in June, 1906; that in June, 1909, said J. G. Pittman borrowed from the Bank of Guntersville, the respondent, the sum of $500, and as security therefor executed his note to the bank due January 10, 1910, and pledged thereto five shares of the capital stock of said bank, of the par value of $500, which stock was the property of M. S. Pittman at the time of his death, of whom the guardian, J. G. Pittman, and his said ward, are the sole heirs and distributees, and on whose estate there had been no administration; the said guardian, J. G. Pittman, died in August, 1909; the default in the payment of said note was paid, and in August, 1911, said bank sold said stock pledged thereto at a public sale, whereat the respondent Thomason became its purchaser for $567, and whereupon the stock certificate standing in the name of M. S. Pittman was canceled, and a new certificate therefor issued to said Thomason. The bill then shows that in October, 1911, the said wards, by their guardian, filed their bill against the administrator of said deceased guardian, and against complainant as surety, for a final accounting and settlement of said guardianship; that in that suit complainant was charged as surety with the value of a five-sixths interest in said bank stock, and all the dividends accruing thereon, and a decree rendered against it in that behalf in the sum of $967.50 for said five-sixths interest, which said judgment remains in effect and has been paid by complainant. It is alleged that respondent bank paid the dividends for the years 1902–1908, inclusive, to said J. G. Pittman, and for the years 1909–1911, inclusive, it appropriated them to secure a debt, and for the years 1912–1914, inclusive, it paid them to respondent Thomason. The bank demurred to the bill on the ground, among others, that it shows, first, a ratification by the ward of the sale by the guardian; second, that the property in the stock passed to defendant bank; and, third, no right of the wards to have or assert any claim against the bank on account of the matters set up in the bill. The prayer is for a plea of subrogation, the rights and equities of said wards of said J. G. Pittman in and to said bank stock and dividends, and that a decree be rendered thereon and therefor against the respondent bank and Thomason.

John A. Lusk & Son, of Guntersville, for appellant. Coleman & Coleman, of Birmingham, and O. D. Street, of Guntersville, for appellee.

SOMERVILLE, J. [1] It is the settled law of this state that a guardian has the power to dispose of the personal estate of his ward, including the transfer of choses in action, without an order of court. This power is said to be coextensive with that of an executor or administrator. Echols v. Speake, 185 Ala. 149, 64 South. 306, Ann. Cas. 1916C, 332; Steinhart v. Gregory, 176 Ala. 368, 58 South. 266.

[2, 3] He cannot lawfully use such property in security or in payment of his own debts, and any one who receives it with knowledge of such a purpose on the part of the guardian is liable to account for its value. Steinhart v. Gregory, supra. But a vendee or pledgee is not bound to inquire as to the guardian's purpose, and is not required to see that the proceeds of the property are applied to the uses of the ward. Steinhart v. Gregory, supra; Farmers' & Merch. Bank v. Sanford, 150 Ala. 195, 43 South. 226. Al-

---

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

though the pledgee might be charged with knowledge of an unlawful purpose by the guardian, if the debt secured is, and appears to be, his pre-existing obligation, yet, if the pledge is for a *present loan*, though it be given to secure the guardian's personal obligation, and though he omit to designate his action as that of a guardian eo nomine, the pledgee without knowledge to the contrary may assume the propriety of the transaction, and will take without liability to account as for a devastavit. Farmers' & Merch. Bank v. Sanford, supra; McLeod v. Drummond, 14 Ves. 352, 17 Ves. 152; Field v. Schieffelin, 7 Johns. Ch. (N. Y.) 150, 11 Am. Dec. 441.

[4] The bill of complaint does not charge either that the guardian's pledge of this stock was for his own debt or use, or that the respondent bank had any knowledge of such an abuse. From the allegations of the bill it must be presumed that the transfer in pledge was with all the formalities needful to vest a perfect legal estate in the pledgee. But this is not here material, since, for the purposes of a pledge, an equitable title is passed to the pledgee by the simple delivery of the stock certificate. 10 Cyc. 637, F, and cases cited.

[5] It is clear that the respondent bank acquired, so far as the bill discloses, an unimpeachable title to the stock in question, and is not liable to account for it, or its proceeds, to any one. So, also, as to the dividends, which, of course, follow the stock.

[6] It may be contended that the four annual dividends, which were paid to J. G. Pittman, if paid before he became guardian, were due to all the heirs jointly, and that such a payment to him did not discharge the obligation as to the others. But it has been decided by this court, in harmony with the general current of authority, that "a debtor may efficiently pay and discharge in whole or in part his debt by payment to one of two or more joint owners thereof." Peck v. Lampkin, 75 South. 580;[1] 22 A. & E. Ency. Law, 524; 30 Cyc. 1183, 1184. The fact that some of the joint obligees are minors cannot alter the rule.

[7, 8] But, apart from that consideration, the whole theory of the bill is that *all* of the dividend payments went into the hands of J. G. Pittman, *as guardian*, and on that theory alone could complainant have been liable to the wards as surety, or claim subrogation now by reason of their payment. If those dividends, or their money equivalent, ultimately went into the hands of the guardian, as such, then the bank could not be held accountable for their premature payment to him. If, on the other hand, they never reached his hands as guardian, complainant could not be liable therefor as surety, and on elementary principles there can be no subrogation as to the payment of the principal's purely personal obligation, for which the surety was not liable.

It must be observed, however, that, construing the bill more strongly against the pleader, it does not even appear that any dividends were actually paid to J. G. Pittman *before* he was qualified as guardian to receive them for the other joint obligees. In any view, the bill is deficient, and the demurrer should have been sustained.

The decree of the chancery court will be reversed, and a decree here entered sustaining the demurrer as to the second and third grounds noted. The other grounds assigned are without merit.

Reversed, rendered, and remanded.

ANDERSON, C. J., and MAYFIELD and THOMAS, JJ., concur.