The bill is filed to specifically enforce a parol contract to devise a parcel of land situate in the townships of Weymouth *Page 450 
and Hamilton, near the village of Mays Landing, in Atlantic county. The premises in question consisted of what had been, many years ago, a farm, upon which was erected a house and other buildings, none of which were up-to-date nor in good repair. Much of the property had been permitted to grow up in a growth of small trees.
The father and mother of complainant occupied the premises as a summer home, making little if any use of it for horticultural purposes. They had two sons, the complainant and his brother, George Edward, who, at the time the alleged contract was made, was in the hardware business in Philadelphia.
The complainant, desirous of entering into the horticultural business, was investigating property in Chester county, Pennsylvania, and had apparently approached his parents for advice and financial assistance. It is testified that the mother and father suggested to him that the property at Mays Landing was quite suitable for his purpose, and that if he would occupy that property and develop the same in the manner in which he contemplated doing to such property as he should buy, that the mother would devise to him the premises in question, and that upon the death of both parents, the same would be his. He did move upon the premises in question and developed it for horticultural purposes, having thereon at the present time, as the complainant's brief expresses it, "a beautiful iris plantation of national fame."
The complainant, his wife and the father and mother lived upon the premises, apparently in complete harmony, and the father and son rebuilt the dwelling house, enlarging it, putting in heat and sanitary conveniences, and also erected other buildings. Both spent money upon these improvements. The son testifies that he expended approximately $12,000, besides giving his entire time to the venture.
The complainant's mother died on or about the 20th of December, 1927. The father died on or about the 15th of January, 1928. By the terms of the mother's will, the father received the entire estate (after the payment of debts) for life. After the father's death, the complainant and his *Page 451 
brother were to receive a life interest, and after their death, to be divided into two parts, one-half to be given to the complainant's brother's children, and the other half (after the payment of $5,000 to the complainant's son) to be given, share and share alike, to the children of the complainant's brother. Beside the premises in question, there was other estate in the State of Pennsylvania.
It is unnecessary to further restate the testimony. The facts as proven in this case brings it squarely within the rulings ofVreeland v. Vreeland, 53 N.J. Eq. 387. I find that the father and mother both agreed that if the complainant should move to Mays Landing and develop the property there, that upon their death, the property should be devised to him; that he did move upon the property in question and expend a large amount of money thereon, the father and mother living upon said premises with him during the greater part, if not all of their lifetime, and that he, the complainant, by his labor and expenditure of money, fully performed upon his part the agreement made by the proposition and its acceptance, and that at the instance of the son, equity will compel the performance of the agreement upon the part of the mother, who held title to the lands in question; that the agreement was mutual, definite and certain, both as to its terms and subject-matter.
The law is clearly set out by Chancellor McGill in Vreeland
v. Vreeland, supra, who said: "That equity will specifically enforce such a parol agreement at the instance of a complainant who shall have completely performed it upon his part, is now established, in this state, beyond controversy. The remedy is afforded upon the ground that it will work a fraud upon him who. induced by the agreement, had in good faith so performed it as to irretrievably change the situation of the parties to his disadvantage, to permit the other party to refuse fulfillment upon his part. It has had frequent recognition and application in adjudged cases in our courts. Casler v. Thompson, 3 Gr. Ch.59; France v. France, 4 Halst. Ch. 650; Johnson v. Hubbell, 2Stock. 332; Van Dyne v. Vreeland, 3 Stock. 370; S.C., 1 Beas.142; Davison *Page 452 
v. Davison, 2 Beas. 246; Cooper v. Carlisle, 2 C.E. Gr. 525;Brewer v. Wilson, 2 C.E. Gr. 180; Eyre v. Eyre, 4 C.E. Gr.102; Brown v. Brown, 6 Stew. Eq. 650; Larison v. Polhemus, 9Stew. Eq. 506; Schutt v. Missionary Society, c., 14 Stew. Eq.115; Pflugar v. Pultz, 16 Stew. Eq. 440; Young v. Young, 18Stew. Eq. 27; S.C., 6 Dick. Ch. Rep. 491; Nibert v. Baghurst, 2Dick Ch. Rep. 201; Drake v. Lanning, 4 Dick. Ch. Rep. 452.
"But a parol agreement of this character, because of the situation and relations of the parties to it, and the consequent opportunity for the perpetration of fraud, is regarded with suspicion, and, when its enforcement is sought, is subject to close scrutiny. It must not only be mutual, but also definite and certain, both in its terms and as to its subject-matter, and it must be clearly proved. Cooper v. Carlisle and Brown v.Brown, supra. So, also, it must plainly appear that that which is alleged as part performance is referable to and was consequent upon the contracts alone, for the purpose of carrying it into effect. Eyre v. Eyre, supra; Pom. Spec. Perf. ¶¶ 108, 109."
I will advise a decree that the agreement shall be specifically performed. *Page 453