645 A.2d 793

TRICO MORTGAGE CO., INC., PLAINTIFF–RESPONDENT,
v. JORGE FORERO AND ROSA FORERO,
DEFENDANT–APPELLANTS.

Superior Court of New Jersey
Appellate Division

Argued on Reconsideration June 7, 1994—Decided July 22, 1994.

Before Judges STERN, KEEFE and NEWMAN.

*E. Robert Levy* argued the cause for Mercury Capital Corporation (*Levy, Lybeck, Bertele & Jaworski,* attorneys; *E. Robert Levy* and *Robert M. Jaworski* on the brief).

*Charles A. Weiss* argued the cause for respondent (*Riker, Danzig, Scherer, Hyland & Perretti,* attorneys; *Charles A. Weiss* and *Anthony J. Sylvester* on the brief; co-counsel *Fein, Such, Kahn & Shepard; Mitchell H. Berger* on the brief).

*Gregory G. Diebold* argued the cause for appellant (Hudson County Legal Services Corp., attorneys; *Gregory G. Diebold* and *Georgia Markouris* on the brief).

*Joseph L. Yannotti* argued the cause on behalf of *amicus curiae* New Jersey Department of Banking (*Deborah T. Poritz,* Attorney General of New Jersey; *Joseph L. Yannotti* and *Wayne A. Watkinson* on the brief).

*Michael F. Spicer* submitted a brief on behalf of *amicus curiae* New Jersey Bankers Association (*Jamieson, Moore, Peskin & Spicer,* attorneys).

The opinion of the court was delivered by

NEWMAN, J.S.C. (temporarily assigned).

On this appeal the court is presented with the applicability of the Secondary Mortgage Loan Act, *N.J.S.A.* 17:11A–34 to –59.2, ("SMLA") to a mortgage loan, assigned on the day of closing to a

licensed secondary mortgage loan company, where a portion of the proceeds was used to satisfy two existing mortgages, allowing the new mortgage to become a first mortgage. This issue arises in the context of an affirmative defense and counterclaim in a foreclosure action pursued by the secondary mortgage company when the defendants, Jorge Forero and Rosa Forero, defaulted on their mortgage payments. Defendant Rosa Forero ("Rosa") appealed from a judgment in favor of plaintiff Trico Mortgage Company, Inc. ("Trico"), entered in the Chancery Division following a non-jury trial. The court below held that the SMLA did not apply. Argument on the appeal was heard October 26, 1993. A decision was entered December 21, 1993. On motion for reconsideration, the opinion was withdrawn. After additional briefing and oral argument, we agree that the SMLA does not apply and affirm.

The relevant facts may be summarized as follows. Jorge Forero ("Jorge") purchased a home located at 419—41st Street, Union City, Hudson County, New Jersey on March 31, 1980. He gave George N. Barrick and Theresa Barrick ("Barricks"), the sellers, a first mortgage in the amount of $27,000.00 for a term of fifteen years subject to an interest rate of 10½% per year, to secure part of the purchase price ("Barrick mortgage"). In 1985 Rosa married Jorge. On January 21, 1987 Jorge borrowed $22,000.00 for a term of approximately four and one-half years subject to an interest rate of 16% per year from HMS Investors, Inc., giving back a second mortgage on the property ("HMS mortgage").

On November 6, 1989 Jorge and Rosa borrowed $80,000.00 for a term of fifteen years at an interest rate of 19.11% per year from Federal Mortgage & Investment Corp. ("Federal"). In return, the Foreros gave Federal a mortgage on the property. According to the Disclosure Statement dated November 6, 1989, the funds were disbursed as follows: $17,601.61 to the Foreros; $2,895.00 to an insurance company for life insurance; $600.00 for attorney fees; $225.00 for an appraisal; $110.00 for filing and recording fees; $475.00 for title insurance fee; $4,164.93 to the Tax Office of

Union City; $15,420.39 to the Barricks to satisfy the first mortgage; and $31,308.07 to HMS Investors, Inc. to satisfy the second mortgage. In addition, the Foreros paid a "prepaid finance charge" (points) of $7,200.00 to Federal.[1] On this same date, November 6, 1989, Federal assigned the note and mortgage to Trico.[2] The title insurance policy issued with the mortgage indicated that the insured mortgage was a first lien. Trico processed the loan through its secondary mortgage loan department. A letter sent to the Tax Office of Union City by Trico characterized the mortgage as a secondary mortgage.

Checks were forwarded to the Barricks and HMS on November 14, 1989. The Barrick mortgage was canceled on November 15, 1989. The HMS mortgage was canceled on November 11, 1991.[3]

The Foreros were divorced shortly after receiving the loan from Federal. Rosa gained title to the property as part of the property settlement from the divorce. The last payment to Trico was made on September 11, 1990.[4]

On February 27, 1991 Trico initiated a foreclosure action against the Foreros. Rosa filed an answer and counterclaim on April 22, 1991. The answer and counterclaim alleged that the SMLA applied and was violated. Trial was held on October 26, 1992. Rosa argued that because the mortgage to Federal was issued

---

[1] Points are the fees charged by the lender. One point is equal to one percent of the total loan amount. *See N.J.S.A.* 17:11A–46(g)(2). The Foreros paid nine points for the privilege of obtaining this loan.

[2] At trial, plaintiff's witness characterized Federal as a loan broker for Trico. However, the loan was made in Federal's name. Trico purchased the mortgage in the secondary market. This apparently is common practice. It is not significant that Federal sold the mortgage on the same day it was created.

[3] The record is silent as to the reasons for the delay in the discharge of record of the HMS mortgage.

[4] According to the record $12,373.56 has been paid on the loan. Interest paid is $10,665.34, while $1,570.15 has been paid on principal. However, these numbers do not add together properly.

while two mortgages were outstanding, it was a secondary mortgage subject to the SMLA. Furthermore, she contended that if the SMLA applied, points were improperly charged entitling defendant to set-off interest paid and points paid, and treble damages for a knowing and willful violation of the SMLA. She maintains that the judgment against her should be reduced to $46,027.56.

The court below entered judgment for Trico in the amount of $110,175.71, finding that the mortgage was not a secondary mortgage and therefore the SMLA did not apply. Citing *Martindell v. Fiduciary Counsel, Inc.*, 133 *N.J.Eq.* 408, 30 *A.*2d 281 (E. & A. 1942) ("equity regards the substance and intent rather than the form") and *Goodell v. Monroe*, 87 *N.J.Eq.* 328, 100 *A.* 238 (E. & A. 1917) ("equity regards as done that which ought to have been done"), the trial judge concluded:

> Very simply stated, when the smoke cleared, and disbursements were given effect to, the two prior mortgages would be paid off and Trico's mortgage would be a first mortgage. Of course, until that happened, Trico would not have a first mortgage, but as stated by the Court of Errors and Appeals, which is good law to this day, equity regards the substance of a transaction rather than the form. And the substance of this transaction was that the two prior mortgages were being paid off and satisfied then and there, and the Trico mortgage would be a first mortgage.

We agree that the Trico mortgage was a first mortgage and, therefore, the SMLA does not apply. In view of the additional arguments made to us and not presented below, we address several points raised before the trial court as well as those argued for the first time on this appeal.

The defendant argued in the trial court and on appeal that the definition of "secondary mortgage loan" found within the SMLA required that a loan which will pay off existing mortgage liens upon the property that becomes the security for the loan is by definition a secondary mortgage loan. In this regard, the SMLA defines a secondary mortgage loan as:

> a closed-end loan or open-end loan made to an individual ... which is secured in whole or in part by a lien upon any interest in real property, including but not limited to shares of stock in a cooperative corporation, created by a security agreement, including a mortgage, indenture, or any other similar instrument or

document, which real property is subject to one or more prior mortgage liens and on which there is erected a structure containing one, two, three, four, five or six dwelling units, a portion of which structure may be used for nonresidential purposes....

[*N.J.S.A.* 17:11A-35(a) ]

It is clear that the plain meaning of this language anticipates that the lien which will secure, in whole or in part, the loan would only come into existence after the loan closed and the proceeds were paid. It is, therefore, this point in time that must be looked at in order to comprehend the legislative scheme which requires, for a lien to result in a secondary mortgage loan, that the real property involved be subject to one or more prior mortgage liens. As indicated, the lien cannot come into existence until the loan closing and payment of the proceeds. It is from that point forward that the property would have to be subject to one or more prior mortgage liens. If the loan proceeds are utilized to pay off the prior liens, the lien could not possibly be upon an interest in real property which was subject to prior liens. Unquestionably, where, as here, a loan pays off prior liens, leaving only the lien of the subject loan, such a loan cannot be subject to the SMLA.

The relevant consideration is the position Federal was in when the loan proceeds were ultimately disbursed. Both the Barrick and HMS mortgage were satisfied with checks sent on November 14, 1989. The eight day delay from the closing date is of no significance. Similarly, the delay in discharging the HMS mortgage of record has no bearing on the determination of the status of the mortgage. The HMS mortgage became unenforceable due to the fact that it had been satisfied, and HMS exposed itself to fines for failing to timely cancel it. *See N.J.S.A.* 46:18-11.3. Additionally, the title insurance policy issued with the mortgage insured a first mortgage. All of these circumstances prior to Trico's involvement indicate that a first mortgage was created and the SMLA did not apply.

Trico purchased the mortgage on the same day as the closing and processed it through its secondary mortgage loan department. A notice was sent to the Tax Collector of Union City by Trico

indicating that the mortgage was a second mortgage. Rosa argues that these facts suggest that this mortgage was a secondary mortgage. Regardless of how the notice to the Tax Collector characterized the mortgage, the description could not change the legal nature of the underlying transaction. With apologies to William Shakespeare, a first mortgage by any other name is still a first mortgage.

Rosa also argues that Federal acted as a broker for Trico, a practice targeted for elimination by the SMLA. There is nothing to support this contention. It is not an uncommon practice to sell a mortgage on the day of closing in the secondary mortgage market. This transaction does not implicate the existence of a broker relationship. Regardless of the trappings, the basic transaction is not altered. Whatever the reasons, these facts do not impact on the status of this mortgage as a first mortgage.

We do not conclude that a first mortgage was created by looking at the intention of the parties, as urged by Trico. Instead, the undeniable facts of the transaction must control our determination. Clearly, the Disclosure Statement provided that the Barrick and HMS mortgages were to be satisfied with the proceeds of the loan. As of the closing date, this transaction was structured as, and was, a first mortgage loan not subject to the SMLA.

█ Rosa argues that this transaction will go unregulated if the SMLA does not apply. The short answer is that is simply not so. The Mortgage Bankers and Brokers Act ("MBBA"), *N.J.S.A.* 17:11B–1 to –20, applies to this transaction. Had the Chancery Division been presented with the issue this conclusion could have been reached based on the evidence presented at trial. The Disclosure Statement, introduced at trial, indicates underneath "Federal Mortgage & Investment Corp." at the top of the page, the following: "Licensed Mortgage Bankers." These words cannot be utilized unless a license under the MBBA is held or there is an exemption from that Act's licensing requirements. *N.J.S.A.* 17:11B–14(a). Since Federal was licensed under the MBBA, the transaction was subject to that Act.

Essentially, the mortgage lending business in New Jersey is regulated by two statutes: the MBBA and the SMLA. The MBBA regulates the making or arranging of loans "secured by a first mortgage on real property on a one to six family dwelling." *N.J.S.A.* 17:11B–1(a). Exempted from the MBBA are "[s]avings and loan associations, commercial banks, insurance companies and credit unions," which are otherwise regulated. *N.J.S.A.* 17:11B–2(a).

The MBBA requires that any entity desiring to engage in that business be licensed by the New Jersey Department of Banking ("DOB"), *N.J.S.A.* 17:11B–3(a); pass a qualifying examination, *N.J.S.A.* 17:11B–4(b), *N.J.A.C.* 3:38–1.4; have and maintain a place of business in this State for the transaction of business, *N.J.S.A.* 17:11B–7; operate each of its licensed offices under the full control and supervision of a licensed individual, *N.J.S.A.* 17:11B–7; be bonded in specified, minimum amounts for the protection of the public, *N.J.S.A.* 17:11B–8, *N.J.A.C.* 3:38–1.6; maintain adequate records of its activities, *N.J.A.C.* 3:38–2.1; maintain minimum tangible net worth levels, *N.J.A.C.* 3:38–1.10; and be subject to examination and investigation by the DOB for compliance, *N.J.S.A.* 17:11B–11.

Under the MBBA, fees and charges are restricted. *N.J.S.A.* 17:11B–13(b); *N.J.A.C.* 3:1–16.2; *N.J.A.C.* 3:38–4.1. Certain advertising practices are prohibited. *N.J.S.A.* 17:11B–14(a). Also, various and detailed disclosures are required at each significant step during the processing of a first mortgage loan application. *N.J.A.C.* 3:1–16.1. Under certain circumstances refunds are required. *N.J.A.C.* 3:1–16.3(e); 3:1–16.4(c); 3:1–16.6(a); 3:1–16.6(b). Finally, special rules are provided for brokers. *N.J.A.C.* 3:1–16.10.

The SMLA, on the other hand, regulates the making or arranging of secondary mortgage loans. It, too, contains licensing, net worth, bonding, testing, record-keeping and other requirements similar, but not identical, to those found in the MBBA. It requires that the promissory note or loan agreement evidencing a

secondary mortgage loan be identified by the words "Secondary Mortgage Loan" printed prominently, in 14–point bold type or larger, centered at the top. *N.J.S.A.* 17:11A–51(a). It also restricts the fees that secondary mortgage lenders may charge, but more severely than does the MBBA. *N.J.S.A.* 17:11A–44.9; 17:11A–46(e); 17:11A–46(g). It includes a prohibition, not found in the MBBA, against charging more than three discount points. *N.J.S.A.* 17:11A–46(g)(2).[5] Unlike the MBBA, the SMLA prohibits brokering of covered loans and soliciting secondary mortgage loan business from loan brokers. *N.J.S.A.* 17:11A–46(i); 17:11A–46(j).

It is inconceivable that the Legislature would have established this elaborate and comprehensive dual statutory scheme if, in fact, as suggested by defendant's approach, there would be few, if any, loans subject to one act (MBBA), and most, if not all, loans subject to the other (SMLA). Interpreting the SMLA to apply to all mortgage loans which immediately prior to closing are subject to one or more prior liens, regardless that the liens are to be satisfied out of the loan proceeds, would render the MBBA and its implementing regulations a nullity. *See In re Keogh–Dwyer,* 85 *N.J.Super.* 188, 198, 204 *A.*2d 351 (App.Div.1964) (court should seek to avoid statutory construction which would render another statute inoperative). Surely, a more practical meaning must have been contemplated.

The meaning ascribed by the trial court is in harmony with the statutory scheme. Thus, any mortgage loan which, after all required disbursements have been made, would be in a first lien position is regulated by the provisions of the MBBA and its implementing regulations unless otherwise exempted. *See N.J.S.A.* 17:11B–2(a). By the same token, any mortgage loan which, after all required disbursements have been made, would be

---

[5] At the time the Forero–Federal transaction occurred, the Act prohibited the charging of any points whatsoever. *N.J.S.A.* 17:11A–46(g).

in a second or junior lien position is regulated by the SMLA unless otherwise exempted. *See N.J.S.A.* 17:11A–61.

Because we conclude that a first mortgage was created, we need not address Trico's argument that even if the SMLA applies, the prohibitions therein on points charged are preempted by the Depository Institutions Deregulation and Monetary Control Act of 1980. 12 *U.S.C.* § 1735f–7a(a)(1). Since we find that the SMLA does not apply by virtue of the existence of a first mortgage, we need not reach this issue.

The conclusion, correctly made by the trial court, is that the mortgage from the Foreros to Federal was a first mortgage lien. Although the trial court did not reach the issue, there were enough facts in evidence below for it to determine that the transaction was regulated by the MBBA. Accordingly, we affirm the judgment entered by the trial court.