## IN RE ESTATE OF KACHELMACHER.

(Decided May 6, 1931.)

*Mr. Smith W. Bennett,* for plaintiff in error,
*Mr. John C. Pettit, Messrs. Williams & Nash* and
*Messrs. Sater & Sater,* for defendants in error.

MAUCK, P. J.   N. L. C. Kachelmacher died in 1917 leaving a last will and testament in which Caleb L. McKee, Charles B. Donohue and Minnarene Burke were appointed executors.   Successive accounts were prepared and filed in the probate court, and

were approved by that court. After the filing of the ninth account, for the year ending December 31, 1926, exceptions were filed to that account by Miss Burke, one of the executors. About the same time she filed an application for a citation to compel Caleb L. McKee, who is described in the will not only as an executor but as trustee, to file a separate account as trustee. McKee had resigned as trustee and executor in December, 1926. About the same time Miss Burke also filed a motion to surcharge McKee as trustee for alleged misfeasance. The probate court rendered judgment adversely to Miss Burke upon all these objections, and an appeal was taken to the court of common pleas from all these judgments. That court dismissed the several proceedings upon the ground that Miss Burke, as an executor, could not be heard in an attack upon the conduct of her coexecutors. This court reversed the common pleas, holding that Miss Burke was competent to move in the premises, and the several proceedings were remanded to that court for a hearing. *Burke* v. *McKee,* 30 Ohio App., 236, 164 N. E., 776. Upon trial in the common pleas it was held that McKee, as trustee, was not subject to citation for failure to file an account, and in the other proceeding it was held that he was not subject to any surcharge. In the third proceeding certain exceptions to the ninth account were sustained by the court of common pleas, and the executors McKee and Donohue apparently voluntarily made certain other corrections in their account in conformity with the position taken by Miss Burke. Other exceptions were overruled, and of such overruling Miss Burke now complains. Miss Burke has prosecuted error to this

court in all three of the proceedings referred to, and separate petitions in error have been filed. These three proceedings in error will be severally disposed of in this opinion.

In case No. 153 we have for review the refusal of the trial court to cause McKee, as trustee, to be cited for failure to file an account as such trustee. This brings before us the peculiar terms by which the testator designated his executors and trustees. It is manifest that the testator did not understand the different functions attaching to executors and testamentary trustees, nor that the duties of the former end where the duties of the latter begin. He did, however, by the tenth item of his will undertake to employ both these terms, and the confusion that was evidently in the testator's mind is reflected by the language of that item. By the first sentence of that item the testator nominates Caleb L. McKee, Charles B. Donohue and Minnarene Burke ''as the executors of this my last will and testament,'' and he asks that the probate court fix bonds ''not beyond the ability of my executors to furnish.'' He then expresses the desire that Mr. Donohue shall have the active conduct of his business interests, and describes Mr. Donohue as the managing executor. By the ninth item of his will he had bequeathed the residuary estate to Caleb L. McKee, in trust for certain named purposes. Indicating the testator's failure to distinguish between the functions of an executor and the functions of a testamentary trustee, he provided for the payment by his trustees of those debts, funeral expenses, and certain legacies which the executors were charged by

the law to pay before his devise in trust could be effective.

Whatever the purposes of the testator were the positive terms of the law must prevail. It is the duty of the executors to execute the will by assembling the assets of the decedent, converting enough thereof into cash to pay the debts and legacies, and to do those things enjoined by law upon the executors as such. Concretely, in this case, it was the duty of the executors, and by that we mean all three of those mentioned, to execute the first, second, third, fourth, fifth, sixth, seventh, eighth and eleventh items of the will, as well as that provision of the codicil that provided for the disposition of the New York Produce Exchange Gratuity Fund. But it was their first duty, however, even before that, to execute paragraph B of the ninth item before the contemplated trust became effective, because that was the first duty enjoined upon them by law. It was further their duty under paragraph C of the ninth item to pay the $500 bequest to Marie Kachelmacher. Until all these things had been accomplished there was no occasion for any testamentary trustee. After the will had been executed to the degree indicated, however, the functions of the executors as executors ceased, and it was then that the first paragraph of the ninth item became operative, vesting in McKee and his successor the naked title to the residuary estate to be administered by himself and his cotrustees, Donohue and Miss Burke, all of them to become trustees, though the latter two are still erroneously referred to by the testator as executors.

Whether all has been done in the administration

of this estate that the law enjoined upon the executors we do not know. If or when the executors' duties have been fully performed, as above indicated, their functions cease. Their final account as executors should be filed then. Then, and not until then, they and all of them should be appointed testamentary trustees. Attention is called to this because it is desirable that the bonds of the executors should be executors' bonds, as prescribed by Section 10606, General Code, while they are acting as executors; while or when they act as trustees they should give bond as testamentary trustees, as prescribed by Section 10591, General Code. It is said by respectable authority that the liability of a surety on the administration bond of an executor does not extend to breaches of trust in regard to his duties as a testamentary trustee. 11 Ruling Case Law, 21.

While it is true that under the ninth item of the will the naked title to the residuary trust passes to McKee, Mr. Donohue and Miss Burke are cotrustees with him, and, generally speaking, are equal with him in the administration of the trust, just as McKee is equally with the others an executor while they are functioning as executors. The several accounts represent all of their activities. There will be no occasion for McKee as trustee to file a trustee's account, and he cannot file one until the executors have filed their final account and he and his associates have been appointed trustees, and when he files one he must be joined by the other trustees, who, except for the naked title, hold equally with him. The trial court was quite right in not citing him to file an impossible account, and the judgment

of the court of common pleas in case No. 153 is affirmed.

Case No. 159 in this court is the proceeding to review the judgment of the common pleas denying on appeal the motion of Miss Burke to surcharge McKee as trustee. This case was without merit and the common pleas was right in denying the motion and exonerating Mr. McKee. In the first place, as heretofore pointed out in the other case, Mr. McKee was acting solely as one of the executors, never functioned as a trustee, and never exercised or attempted to exercise any control over the property except concurrently with his associate executors. In addition to this, it ought to be said that we have examined the lengthy record and find that Mr. McKee was without fault in the matter upon which he was assailed. Neither he, Mr. Donohue, or Miss Burke, was bound to know that the stock in the Bessie Furnace Company would eventually become worthless. There is nothing to indicate that they or any of them ought to have realized what other prudent business men did not realize, and that is that a sharp industrial slump would follow wartime industrial activities. As Mr. McKee was singled out in this proceeding for direct and individual attack, it is fair that it be now said that there is not a thing in the record that tends to show that Mr. McKee was other than an honest and faithful trustee. This record indicates that his conduct justified the faith reposed in him by the testator.

The judgment in case 159 is affirmed.

In case No. 140 we have for review the disposition made by the court of common pleas of exceptions filed by Miss Burke to the account prepared

and filed by Mr. McKee and Mr. Donohue. These exceptions as originally filed were fifteen in number. The fourth, seventh, eighth and ninth exceptions were sustained. The other numbered exceptions were overruled. Those overruled related to the fact that the executors had charged income taxes and penalties, franchise taxes and attorney fees to the *corpus* of the fund.

So far as exception 3 relating to attorney fees is concerned we see no objection to the allowance. Attorney fees of executors in administering the estate are properly charged to the *corpus,* and the record does not show that the services questioned were not of this character.

There were in addition to these exceptions what were called amended exceptions filed by Miss Burke, which were also overruled. These amended exceptions recited that after this case had been appealed to the court of common pleas the executors had made corrections in their account, aggregating $6,387.25, and that as these corrections in the account were substantially an alteration of the account in the way that the exceptor prayed she asked that her exceptions in that regard be sustained. The action to which Miss Burke excepted, other than the third, so far as here under review, involves solely the question whether certain current taxes should be charged to the *corpus* of the Kachelmacher estate or should be charged to the annual income, and these questions are important only in so far as they affect the compensation paid or to be paid to the executors. The will provided for the executors' compensation in these words: ''I hereby fix the full compensation for all services whatsoever rendered

by my said executors (including the trustee duties) at seventeen (17) per cent per annum of the annual net income of the estate, to be apportioned as follows: ten (10) per cent to Charles B. Donohue, the managing executor, five (5) per cent to Caleb L. McKee, the trustee and executor, two (2) per cent to Miss Minnarene Burke, as executrix, these limits of compensation to be applied to any successors of the gentlemen named above; but the managing executor's compensation shall never be less than three thousand six hundred dollars ($3600) annually, and if his commission as stated above should pay him less than $3600 in any one year period, I direct that funds of the estate be added to bring his compensation up to the figure.''

This language is not obscure. It contemplated a long service on the part of these executors and made a fair basis for their remuneration, but confined it to the proportions named of the net income of the estate. Certainly any method of accounting would require current taxes to be paid out of the gross income before the net income could be ascertained. It seems to follow therefore that a charge of income or annual franchise taxes to the *corpus* of the estate, rather than to the gross income, improperly results in an increase of the executors' compensation, and unless some imperative reason for the contrary exists the probate court, or, on appeal, the common pleas court, ought to protect the estate against such accounting when attention is called to the fact and to its effects. It is urged, however, that we are not at liberty to ascertain or apply the right rule in this case for the reason that in an action to construe the will brought under Section 10857, Gen-

eral Code, to which all three executors were parties, a different interpretation was placed upon this item of the will by the court of common pleas, and that the judgment entered in that court is *res judicata* as between Miss Burke on the one side and Mr. McKee and Mr. Donohue on the other. If this were true, it would be unfortunate for the trust, and, quite likely, equally unfortunate for the executors.

In the suit to construe the will, while the ultimate beneficiary, the Kachelmacher Varicose Veins Research Foundation, was mentioned in the title of the case as a party defendant, that foundation was not in fact in existence, and was, of course, not a party to that case. That judgment could not and did not bind that, as yet, inchoate foundation. So far this foundation is only a thing in contemplation. It is possible that at some time some Attorney General of Ohio, in the exercise of his duties under Section 340, General Code, to enforce the performance of a charitable trust, will examine the accounts of the executors in this case, and any exceptions made by him to the final account will likely open up all of the preceding accounts, and when that is done, and not until that is done, or some period of limitation has run, will the judgment of the courts approving these accounts be such a finality as to protect the executors and their sureties. It, of course, will not be contended that the action to construe the will resulted in a judgment binding upon the attorney general.

But if Miss Burke were so bound by the judgment to construe the will as to silence her voice at this time, it nevertheless becomes the duty of the probate court and of the common pleas on appeal to protect

the estate against unwise and illegal accounting and improper and illegal charges, acting *sua sponte*, regardless of the source from which a complaint comes or information is received, for the protection of the beneficiary that is now incapable of speaking for itself and was not a party to the action to construe.

In addition to all this, however, we are of the view that there was no judgment entered upon the action to construe the will that prevents Miss Burke from being heard anew in her protests against charging current property, income and franchise or other taxes to the gross income of the estate. We come to this conclusion, first, because the court of common pleas in the action construed was not asked to construe the will in that particular, and if it attempted to enter a judgment along that line its judgment was not responsive to any pleading. The question was *coram non judice* and the judgment, if any, of no avail. *Spoors* v. *Coen*, 44 Ohio St., 497, 9 N. E., 132. This we think manifest from a quotation taken from the petition to secure a construction. The petition, of course, is lengthy. After propounding a question relating to the oil business of the estate the petition continues by quoting from item 10 of the will, the provision heretofore quoted relating to compensation. The petition then continues: "The plaintiffs are in doubt as to the provision of the will last above quoted in this, to wit: The salaries are to be paid from net income unless it be the part necessary to make up the managing executor's yearly salary to $3,600, which probably could be taken from any funds of the estate. How is the net income to be arrived at? There are diverse questions such as office expenses, attorney

fees, probate court costs, etc., that would be paid and be payable if the estate had no income whatever. These plaintiffs wish to know if items of this kind and of the same nature should be charged against capital income in determining the net income of the estate, and what items of expense are properly chargeable against capital.''

The executors seemed to be in doubt about office expenses, attorney fees and costs; but it seems never to have occurred to them that taxes could be otherwise charged than to income. In construing the will in response to the paragraph quoted from the petition the court said this:

''The fifth question concerns the meaning of 'net income' as that term is used in Item Tenth and what items of expense are proper charges against the gross income in order to determine the net income.

''Answer: The commonly accepted definition of 'net income' is the residue of the gross income from any business after paying all expense of producing a fund.

''The next part of the question is—What items of expense are proper charges against the gross income in order to determine the net income?

''Answer: The necessary and ordinary expenses incident to the settlement of an estate are properly chargeable against principal as are also such charges as taxes, court costs, attorney fees, office expenses and charges incident to the consolidation and preservation of the estate under the name of the Kachelmacher Estate until ten years after the death of the last surviving legatee of a life income and its final disposition as provided in the will. But the court finds that the executors' fees are not as

a whole chargeable to principal; on the contrary, that the part earned in carrying on the various business interests of the testator should be charged against income, and that in determining these parts the executors should use their best judgment subject to the approval of the probate court in passing upon their divers accounts."

A part of this entry is not clear even if the question of current taxes had been before the court. We think that all that the court held in that respect, or could have held, was that taxes accrued or accruing, as well as all other expenses, are liabilities against the whole estate and must be satisfied if it be necessary to exhaust the principal, and accordingly may be charged to principal, where necessary, but that such charges may not be so made to principal as to enhance the compensation of the executors or trustees. The plea of *res judicata* is accordingly unsound.

Having thus arrived at the principle by which we conceive the rights of the parties to be determined, we are at some loss as to the judgment to be entered. This loss proceeds from the fact that the exceptor has shown by the letter of Battelle & Battelle, public accountants, that all of the principles of accounting which she sought in the attack made by her on the ninth account have been actually adopted by the other executors, and that the necessary changes to effect this have been in fact made in the tenth and subsequent accounts. Indeed, she urged that her exceptions be sustained because the accounts of the estate had been changed to conform to the position taken by her so far as the charge of taxes was concerned. While the trial court was in

error in holding that the question of taxes was *res judicata*, it was right in overruling the exceptions if the accountants had already made the changes demanded and the question had become moot. The trial court did, however, overlook in its judgment some further personal relief to which Miss Burke was entitled. Miss Burke, in battling for a system of accountancy that would protect the estate, has done a fine public service for which she deserves commendation. Her position was somewhat heroic. If she should succeed in establishing the soundness of her position, she would reduce her own compensation and personally profit in no way at all. If she lost, she was likely to pay her own counsel fees. In the cases under review she must pay her own attorney in the cases in which she loses. In the instant case, however, she is entitled to her counsel fees, to be taxed in the costs against the estate. Such fees are not to be predicated solely upon the amount saved the estate by the reduced compensation of the executors in the ninth account, but to the value to the estate of her having established two important principles for the protection of the estate. The first of these is the right of herself as coexecutor to challenge the acts of her associates; the second is that current taxes and all other expenses shall be charged to income before the net income is employed as a basis for the calculation of executors' compensation.

The judgment of the court of common pleas in case No. 140 is reversed, with directions to allow reasonable counsel fees to Miss Burke, and with further directions that if the changes in the account with reference to taxes have been made to overrule

such exceptions, and if they have not been made to sustain the same.

*Judgments in cases numbered 153 and 159 affirmed.*

*Judgment in case No. 140 reversed.*

MIDDLETON and BLOSSER, JJ., concur.