171 So. 280

## WATTERS v. FIRST NAT. BANK OF MOBILE.

### 1 Div. 908.

Supreme Court of Alabama.

Oct. 29, 1936.

Rehearing Denied Dec. 17, 1936.

Faith & Holland, of Mobile, for appellant.

Stevens, McCorvey, McLeod, Goode & Turner, of Mobile, for appellee.

Harry T. Smith & Caffey, of Mobile, as amici curiæ.

GARDNER, Justice.

That "the best laid schemes o'mice and men gang aft a-gley" is well illustrated by the will of Julian A. Watters, Sr., here presented for judicial interpretation, and involving the final disposition of an estate of approximately three-quarters of a million dollars.

The will's uniqueness lies in the apparent confident anticipation of a happy family of both boys and girls, with some detail of differing provisions for each separate class, though at the time of its execution in April, 1913, the testator had a wife and only child, a son 5 years of age. But the testator died within less than a year (the following September), and the children, so confidently anticipated, were never born, his widow and only child constituting the survivors of his immediate family. The widow has remarried (now Mrs. Dumont), residing in New Orleans, and is content with her income derived and payable monthly from that part of the estate designated for that purpose, as provided in the will. She is apparently disinterested in this litigation.

The son, Julian, Jr., in the course of time was stricken with illness (sleeping sickness), and, before reaching his majority, in January, 1929, had become incapable of industry or the proper care of an estate, though without serious impairment of his mental faculties, and this condition continued to the time of his death in June, 1935, when he was 27 years of age. In the meanwhile, Julian, Jr., had married, and there was born to the union one son, Julian A. Watters, III, who, by his guardian ad litem prosecutes this appeal. At the time of his death said Julian, Jr., left surviving his widow, Madelyn Watters, and their one son.

Previously, and while his child was 3 years of age, Julian, Jr., had executed a will, which has been duly admitted to probate, and by the terms of which his said widow, Madelyn Watters, is given his entire estate of every character and description. It is by virtue of this will by her husband that Madelyn Watters lays claim to the estate of Julian A. Watters, Sr., upon the theory that under the terms of the latter's will Julian, Jr., took a vested interest in such estate of his father when he reached the age of 21. This is the view entertained by the learned chancellor, and the entire estate so decreed to be hers.

The minor, Julian A. Watters, III, insists that under the will of Julian A. Watters, Sr., the estate is his, and the contest here is in fact one between the mother and her minor son, now about 6 years of age, with so large an estate as the goal.

A short time (March, 1929) after Julian, Jr., reached 21, the First National Bank of Mobile, as trustee of the will of Julian Watters, Sr., filed its bill for interpretation. of the will, with particular reference to the matter of acceleration of the income payable to Julian, Jr., as provided in the will of his father: his physical condition rendering it impossible to comply with the conditions therein set forth. The trial court concluded, and so decreed (November, 1929), that due to such physical incapacity Julian, Jr., should be paid the income from his share of the estate since arriving at the age of 21, and from year to year thereafter until he reaches the age of 30 years, "when he shall receive the entire corpus of his share of said estate."

The decree made reference to the fact that Julian, Jr., had a child then living, meaning this appellant, Julian, III, but who was not made a party to the suit. Counsel for appellee make explanation in brief that the child was born in June, 1929, following the filing of the bill in the month of March preceding. The fact remains that Julian, III, was in being during the pendency of that proceedings and when the decree was rendered, and was not in any manner made a party or represented therein.

On appeal to this court, the decree was affirmed with a brief, though entirely adequate, opinion, if the matter of income and its acceleration was alone to be considered. First National Bank v. Watters, 220 Ala. 356, 125 So. 222, 225. The record of that appeal bears every indication that it was a friendly proceeding, instituted for the purpose of securing income to Julian, Jr., and to meet an unusual and rather urgent situation, unanticipated by the testator in the strict wording of the will, but nevertheless with his general intent to provide support for his son. And the real question before the court, and here considered on appeal, was the power of the court to accelerate the payment of income to an afflicted child, and we think a reading of the opinion here rendered, limited as it is to "the case now before us," readily discloses such was the issue and such the question determined.

There was no holding that Julian, Jr., acquired a vested interest in the corpus of the estate when he reached 21, nor was the final disposition of such corpus involved in the proceeding. Indeed, the answer and cross-bill of Julian, Jr., in those former proceedings disclose that he sought to have the court decree a portion of the corpus of the estate, and that he would be entitled to the same upon reaching the age of 35. But no such relief was granted, but the income alone decreed. From that decree Julian, Jr., did not prosecute any appeal or cross-assign any errors on the appeal, but acquiesced therein. On appeal the matter of income was considered the question to be determined, and in which Julian, Jr., only was interested.

■■ It is in the light of these facts (and the positive authority of a decision is coextensive only with the facts upon which it is made, Walker v. Walker, 17 Ala. 396), that the expression of the opinion "no contingency appears which would ultimately defeat the right of the beneficiary for whose benefit the fund is to be applied," is to be viewed. We have referred to the fact that Julian, III, though in being, and expressly mentioned in the will of Julian Watters, Sr., under the general designation "grand-children," was not made a party to that litigation, nor in any manner represented therein, and the decree rendered could not be properly held as conclusive against him. In re Kachelmacher's Estate, 40 Ohio App. 282, 178 N. E. 314.

Viewed, therefore, in any aspect, we think the present appeal presents the matter of the final disposition of the corpus of the estate and the interpretation of the will relating thereto, entirely unembarrassed by any previous ruling on former appeal.

The will here involved has been ably discussed by counsel for appellant, for Madelyn Watters and for the trustee, with more than one theory advanced as to its proper interpretation, and answered by elaborate briefs by Madelyn Watters and the trustee, counsel for the latter joining with Madelyn Watters in her contention that her husband, Julian, Jr., acquired a vested interest upon reaching the age of 21 years. Necessarily, therefore, the argument has taken a wide range and many authorities noted. Those cited in the

234

opinion of the chancellor, however, are the cases more nearly applicable, and upon which chief reliance is had. The following excerpt from the chancellor's opinion contains the citation of authorities, with appropriate heading of the legal principles which were of controlling influence in the rendition of the decree:

"In the first place, the law favors the vesting of estates at the earliest possible moment. Betts v. Renfro, 226 Ala. 635, 148 So. 406, 409; Crawford v. Engram, 153 Ala. 420, 45 So. 584; Fountain v. State, 210 Ala. 51, 97 So. 59; Andrews v. Russell, 127 Ala. 195, 28 So. 703; Pearce v. Pearce, 199 Ala. 491, 74 So. 952; Duncan v. De Yampert, 182 Ala. 528, 62 So. 673; Montgomery v. Wilson, 189 Ala. 209, 66 So. 503; Campbell v. Weakley, 121 Ala. 64, 25 So. 694.

" 'If futurity is annexed to the substance of the gift, it is said to be contingent, if it is merely annexed thereto as the time of payment, enjoyment, or delivery of possession, the estate is vested.' Marr v. McCullough, 6 Port. 507; Henderson v. Henderson, 210 Ala. 73, 97 So. 353; High v. Worley, 32 Ala. 709; Andrews v. Russell, 127 Ala. 195, 28 So. 703; Crawford v. Carlisle, 206 Ala. 379, 89 So. 565; Duncan v. De Yampert, 182 Ala. 528, 62 So. 673; Gregg v. Bethea, 6 Port. 9, 21.

" 'Where the words of one part of a will are capable of a two-fold construction, that interpretation should be adopted which is most consistent with the intention of the testator as ascertained by other provisions of the will.' 28 Ruling Case Law, 218; Pearce v. Pearce, 199 Ala. 491, 74 So. 952; Gunter v. Townsend, 202 Ala. 160, 79 So. 644.

" 'The presumption that a legacy was intended to be vested applies with far greater force where a testator is making provision for a child * * * than where the gift is to a stranger or collateral relative.' 28 Ruling Case Law 232.

"And most important of all, the testator's intent as drawn from the four corners of the will, should be given effect.

"From an examination of all the provisions of the said will of Julian A. Watters, Sr., in the light of the above rules of construction, the court is of the opinion and finds that Julian A. Watters, Jr., took a vested estate under said will as set out in the next paragraph hereof. This conclusion accords with the language of the Supreme Court in the case of First

National Bank v. Watters, 220 Ala. 356, 125 So. 222, in which that court, in dealing with the interest of Julian A. Watters, Jr., under this same will said:

" 'No contingency appears which would ultimately defeat the right of the beneficiary' (Julian A. Watters, Jr.)."

■■■ There is of course no disagreement as to these principles of law and rules of construction, but the difficulty arises in their application to the will before us. It has been often stated that rules of construction are adopted as an aid to the court in ascertaining the intention of the testator when doubtful from the provisions of the will, but the intention of the testator is always the polestar in construction, the cardinal rule, and the one above all others, being to ascertain, and, if lawful, give effect to, the testator's intention. To this intention all rules must bend. Betts v. Renfro, 226 Ala. 635, 148 So. 406; Jemison v. Brasher, 202 Ala. 578, 81 So. 80; Thompson's Construction of Wills, § 44, pp. 56, 57. The will and all its parts are to be considered, and due account taken of the manifest scheme of the testator as therein disclosed—all of which is to be viewed and studied in the light of common sense. Walls v. Walls, 218 Ala. 147, 117 So. 670; Henderson v. Henderson, 210 Ala. 73, 97 So. 353.

■■■ Much stress is laid upon the principle that the law inclines to regard legacies as vested, rather than contingent, and the numerous authorities noted by the chancellor so announce this rule. But the basis of this rule rests in the presumption that the testator had in view the interests of the legatee who is the object of his bounty (Travis v. Morrison, 28 Ala. 494), and the question recurs, to the mind of the testator, as to what he considered to the best interest of the object of his bounty. If the whole scheme of the testator, as gathered from the entire will, discloses that he considered an early vesting of interest in his children not to their advantage, then, of course, the reason for the rule and its foundation would fail, and it would lose its significance. As said in the Travis Case, supra (cited approvingly in a number of cases, First National Bank v. Cash, 220 Ala. 319, 125 So. 28): "The law does not favor the vesting of legacies, contrary to the testator's intention, as inferred from an examination of the entire will."

■ And, speaking generally of vested and contingent estates, is that other rule, often reiterated in the authorities and akin to that just considered, to the effect that, if futurity is annexed to the substance of a gift, it is contingent; if merely annexed thereto as the time of payment, enjoyment, or delivery of possession, the estate is vested. Crawford v. Carlisle, 206 Ala. 379, 89 So. 565; Betts v. Renfro, supra.

■ There is suggestion that, as the income from the estate is provided in the will for the children, this is a strong indication of a vested interest immediately (69 Corpus Juris, 607), and authorities are cited to the effect that a devise of the income of property, without limit, carries with it the property itself (Scruggs v. Yancey, 188 Ala. 682, 66 So. 23; Guesnard v. Guesnard, 173 Ala. 250, 258, 55 So. 524), which, of course, is subject to the limitation "unless a contrary intention appears," and a gift over of the corpus, as observed in Roberts v. Cleveland, 222 Ala. 256, 257, 132 So. 314, destroys the force of the presumption.

With these general observations as to rules of construction and their effect, we turn to a brief consideration of the terms of the will of Julian A. Watters, Sr. It was admittedly written by a skilled attorney. The first seven paragraphs are of slight influence here—gifts to cousins, a nephew, a sister, the wife as to home and furnishings, the son, Julian, Jr., a lot in Mobile, and a faithful servant lands in Choctaw county. The eighth and concluding paragraph embraces an elaborate and carefully considered scheme of the testator for his wife and children. It begins with the words "I do give, devise and bequeath all of the rest and residue of my estate, real, personal and mixed, of whatsoever kind and character, and wheresoever situate, to the said City Bank and Trust Company in trust, for the following purposes." It may be here added that the named bank was absorbed by the First National Bank, which succeeded to this trusteeship, and may be referred to as the trustee. An active trust was then created, with authority to the trustee to manage and control "my estate," collect the rents and income, which are to be paid out as therein directed, and with authority to sell the personalty for the purpose of reinvestment. An income of $200 per month for life was provided paid to an aunt, Cammie A. Watters, a sister Lucy W. Chaney, and $100 per month for life to a niece Lucie Chaney. Then follows the provision that "all the balance of the rents, incomes and profits arising from my estate, after making the said monthly payments, hereinabove provided for, shall, so long as my wife may live, be divided between my wife and children, share and share alike. My wife's share of said income shall be paid over to her on the first day of each month as long as she may live. After my wife's death, the said entire income shall be divided equally amongst my children, and be in all respects treated as if no provision had ever been made for my wife."

An elaborate scheme is provided for income to his children, one plan while the child is under 18 and another while over 18 and under 21, and, as to the boys, a plan for withholding income and distributing a part of the corpus of each son's share upon certain contingencies.

It stands out in bold relief from the language of the will that the testator, with a large fortune which he had managed to accumulate at stake, was looking far into the future, and was considering the temptations that beset inexperienced young men and the dangers attendant upon a sudden acquisition of great wealth. He wished his sons well educated, but they must also show themselves sober and industrious, and he also wanted to test their ability as money makers. As to his daughters, though none in existence, he likewise wanted them educated, and to receive their income from their share of his estate until they arrived at the age of 30 years, at which time the trustee is to distribute to them their entire share in the corpus of his estate. The maximum period for final distribution as to the sons is 35 years of age. Prior to the oldest child reaching 21, the estate was to be kept together as one trust fund. But the will provides that: "When my oldest child reaches the age of twenty-one years, the corpus of my estate shall be equally divided, one share being set apart for the benefit of each of my children, and another share set apart for the benefit of my wife, if she is living, and each of said shares shall continue to be held in trust by the City Bank and Trust Company,—the corpus of the share set apart to my wife remaining in its hands for the purpose of paying over to her the rents, incomes and profits thereof as long as she lives, and distributing the remainder thereof amongst my chil-

dren, share and share alike, just as if the same had been set apart to them originally under the terms of this will."

■ It is upon this clause of the will, and the use of the word "divided" therein, upon which the court below in large part rests the conclusion there was an absolute estate vested in Julian, Jr., when he arrived at the age of 21 years. But we cannot ascribe so far-reaching a meaning to the word "divide" when the whole will and scheme of the testator are taken into account. The testator has used throughout the words "divide" and "distribute," and, though these words may often be used synonymously, yet we are persuaded they were used in this will with a different meaning. Their use in the will applying to the same subject matter is some indication that the testator had in view different results. Williams v. Fundingsland, 74 Colo. 315, 221 P. 1084, 63 A.L.R. 77; Thompson on Construction of Wills, § 75; 69 Corpus Juris, 85; Smaw v. Young, 109 Ala. 528, 20 So. 370. And while in Boshell v. Boshell, 218 Ala. 320, 118 So. 553, is the statement that, standing alone, the word "divide" might import a fee simple, yet that case discloses that the word did not stand alone and as there used was not given such effect.

So, here, the word "divide" does not stand alone, but forms but a part of a general scheme as to the proper management and disposition of a large estate, and we are in accord with appellant that it was used in the sense of segregation for administration purposes.

When the testator makes reference to a payment or final disposition of funds, the word "distribute" is used, and the final payment of the corpus of the estate to the children is designated as a distribution and not a division. And, when so used, it has the meaning attributed to the word in People v. Dime Savings Bank, 350 Ill. 503, 183 N.E. 604, where the court observed that "actual distribution of tangible things involves the notion both of separation or division and delivery." And under the scheme of the will an absolute and unconditional estate was to pass to the children only as and when distributed or paid over to them or due to be paid over to them under the terms of the will. Numerous references to various expressions in the will where the words "divide" and "distribute" are used are found in brief for appellant, but, as the will appears in the

report of the case, we consider these details unnecessary here to enumerate, and merely observe that their consideration adds support to this conclusion. It is of course understood that these observations are to be considered as embracing the whole will and scheme of the testator, and with particular reference to what is referred to in brief as the residuary clause of the will which reads as follows:

"After the death of my wife, all of the share of my property which is set apart for the purpose of providing an income for her during her life, I give, devise and bequeath to my several children, share and share alike. Should she die before the final distribution to all of my children, said trustee shall immediately distribute to each child who may have already received a final distribution, his or her share thereof, and the share of each of said children who may not at that time have received a final distribution, shall be added to the corpus of my estate then in the hands of said trustee. Should my wife and all of my children die before my entire estate shall have been distributed by said trustee, then my said trustee shall distribute all of the property belonging to said trust then remaining in its hands undistributed, to my sister Mrs. Lucy Chaney, or, if she is dead, to her heirs, to be and become her or their absolute property, unless some one of my children shall have left issue, in which event, I give, devise and bequeath said undistributed portion of my estate to my said grand-children, share and share alike, instead of to my sister, Mrs. Lucy Chaney."

This clause is full of significance, and cannot be ignored. As we understand the argument of appellee, this clause is disposed of upon the theory that it has application only in the event of the death of the oldest child before reaching the age of 21 years. But it does not so read— it says: "Should my wife and all my children die before my entire estate shall have been distributed." When the will was written, testator had one child, Julian, Jr., 5 years of age, but seemed confident of several more children, both boys and girls, and made provision for these unborn children. As argued by counsel for appellant, the language of the will indicates an expectation on the part of the testator of two girls and, perhaps, two more boys. Julian, Jr., was of course the oldest child, and, if the residuary clause

is to be limited as thus insisted by appellee, the testator contemplated the marriage of Julian, Jr., the birth of a child to him, and Julian, Jr.'s., death before he reached his majority, and even more unreasonable results follow consideration of the unborn children, their marriage and death.

We think the application of the rule of common sense tends strongly to repudiate this theory of the residuary clause, and that its correct construction is that the testator meant that it should have application at any time, whether it be before or after Julian, Jr., reached his majority.

Nor are we impressed with the suggestion that this residuary clause may properly be interpreted as having reference to that part of the corpus set aside for the purpose of paying the monthly allowance to the aunt, sister, and niece of the testator. But the residue of the estate, in its entirety, was devised to the trustee to manage and control, and out of its income these allowances were to be paid. There is no requirement, or even suggestion, of any segregation of the corpus for this purpose. It was one trust estate with a first charge upon the entire income for the payment of these allowances. But we, forego further discussion of this phase of the case, though some further detail argument might be indulged tending to support the conclusion reached.

We have given the language of the will and the scheme of the testator therein disclosed careful consideration, but we are unable to conclude that the proper interpretation creates a vested absolute estate in Julian, Jr., when he reached 21 years of age; the division referred to meaning, as we are fully persuaded, a segregation for administrative purposes only.

■ The authorities noted by counsel for appellee Madelyn Watters to the effect that Julian, Jr., acquired such vested estate when he reached the age of 25 years relate, in large part, to conditions subsequent (69 Corpus Juris, 682; 28 R. C.L. 320; Pitts v. Campbell, 173 Ala. 604, 55 So. 500), and the generally accepted rule is that conditions precedent are not to be excused of performance (69 Corpus Juris, 679 and 682), for the courts must observe care that they not make a new will for the testator. Spencer v. Title Guarantee L. & T. Co., 222 Ala. 485, 132 So. 730.

Indeed, we are inclined to agreement with appellant that the "condition precedent," as to a vested interest in Julian, Jr., was his arrival at the age of 35 years, and that the matter of acceleration of the distribution of the corpus to him at 25 was a privilege or power, and not strictly a condition precedent.

The testator often makes reference to "my estate," and the mere fact that the will, in speaking of the children, refers to "his share" or "her share," we do not consider presents any matter of special significance. It doubtless means nothing more than the presumptive or prospective interest of the children. McCartney v. Osburn, 118 Ill. 403, 9 N.E. 210; Johnson v. Terry, 139 Ala. 614, 36 So. 775; First National Bank v. Cash, 220 Ala. 319, 125 So. 28.

■ Nor does the will contain any words of gift at the present time to Julian, Jr., and we are persuaded that futurity was annexed to the substance of the gift and not to its mere payment or enjoyment. The whole scheme of the testator was a post mortem control of his estate by way of trusteeship of the bank, which held the management, control, and title for the testator until the time for final distribution. And adding force to this conclusion is the gift over to the sister of testator, or her heirs, or to the grandchildren, found in the residuary clause of the will, which clause cannot be ignored. Collier v. Slaughter's Adm'r, 20 Ala. 263; Johnson v. Terry, supra; First National Bank v. Cash, supra.

This clause contains what is known as an alternative contingent remainder, one taking effect if the other does not, and the time fixed for determination of that matter is the death of Julian, Jr. The testator has expressly preferred his grandchildren, and the fact that Julian, Jr., left issue surviving him, removes the sister or her heirs as having any further rights. The effect, therefore, is the contingent remainder becomes a direct remainder in this appellant, the grandchild of testator, and, in our opinion, became a vested remainder as defined in section 6905, Code 1923. Perhaps a like result would follow upon consideration of section 10591 of the Code of 1923 (Pierce v. Fulmer, 165 Ala. 344, 346, 51 So. 728), but we need make no definite determination of that question, as the first-cited statute suffices for the purposes here in hand.

■ Our conclusion is that this appellant, the grandson, has now a vested

interest in the entire estate. The result of a descent of the estate to blood relation of the testator has been said to be a circumstance usually considered of some significance in the construction of wills. Bingham v. Sumner, 206 Ala. 266, 89 So. 479; 69 Corpus Juris 100.

As to the ultimate disposition of the corpus, testator's desire was that his children receive it, provided they reached a given age. But he makes it clear that, if they do not live to obtain the corpus, the estate should go to their issue, if any—his grandchildren—using the unambiguous language, "I give, devise and bequeath said undistributed portion of my estate to my said grand-children, share and share alike"—thus foreclosing any power of disposition of the corpus by any of his children prior to the time of a final distribution of his or her share.

■ We are also persuaded the fund referred to as the "accumulated income" follows the same course of the corpus, and as a part thereof likewise goes to appellant. This accumulated income was to be paid over upon final distribution, and it therefore becomes a part of that fund. Julian, Jr., did not live to acquire anything by a final distribution, and we conclude, as stated, that this fund follows the corpus of the estate. And the statute (section 6914, Code of 1923 [section 3410, Code of 1907]) is, in our opinion, without application to the situation, here presented. Henderson v. Henderson, 210 Ala. 73, 97 So. 353.

■ The allowance to the aunt and sister of testator has terminated by death, leaving the allowance of $100 per month income to his niece, Mrs. Steele.

The chancellor charges $50 per month against the income from the corpus set aside for the widow, and as to the remaining $50 per month has set aside $25,000 of the corpus from which Julian, Jr., has been receiving his income. We think the arrangement thus made was within the court's authority (69 Corpus Juris, 798, 806), though this allowance was a charge upon the entire corpus without regard to any matter of segregation. This arrangement leaves a considerable sum now distributable to this minor grandchild. But we see no necessity for the appointment of a guardian to receive the same. The bank as trustee may continue to manage these funds, and, in the event this appellant's

mother has not sufficient income of her own, the trustee may be ordered to pay to her so much of the income therefrom as would be proper, not only for the support of her minor son, but also for her own support. Cooley v. Stringfellow, 164 Ala. 460, 51 So. 321; Farmer v. Coleman, 231 Ala. 527, 165 So. 778. This is a matter properly to be considered and determined by the chancellor in the further progress of the cause.

■ As to compensation to the guardian ad litem, the following excerpt from Andrews v. Hall, 15 Ala. 85, is much in point: "It is an error to suppose that the office of a guardian ad litem is a mere sinecure. It often happens that he should seriously contest the plaintiff's claim."

In the instant case the construction of the will favorable to the vesting of this entire estate in Madelyn Watters, and to the exclusion of her minor child, was not only ably argued by her counsel, but with equal earnestness and ability urged upon the court by counsel for the trustee bank, without interest and acting as amicus curiæ. The guardian ad litem, recognizing the difficulties in the way of a solution of the questions involved and realizing the magnitude of the fortune at stake, with commendable zeal for his ward, presented to the chancellor a petition for an order permitting the employment of Mr. E. W. Faith to assist him as associate counsel in the representation of Julian A. Watters, III, his minor ward. The court expressed the opinion that it was both expedient and to the best interest of the minor that such petition be granted, and ordered accordingly. And of consequence the firm of Faith & Holland were so employed, and have ably and successfully represented the minor in association with the duly appointed guardian ad litem. The record discloses that employment of associate counsel was fully justified, and the course pursued by the guardian ad litem entirely proper. Glass v. Glass, 76 Ala. 368.

A reference should therefore be held to ascertain the proper amount to be allowed the guardian ad litem representing the minor, Julian, III, and such allowance should include a reasonable fee to be paid the associate counsel employed by him under order of the court. But this expense is properly payable out of the half of the estate now available to the minor under this decision.

It results, therefore, that the decree appealed from is here reversed, and the cause remanded to the court below, with directions to there enter a decree construing the will of Julian A. Watters, Sr., in accordance with the views herein expressed, and a reference for proper compensation for the guardian ad litem, and in further administration of the trust a proper order, upon petition being so presented and substantiated to that end, as to allowance to the ward's mother, Mrs. Julian Watters, Jr.

Reversed and remanded.

ANDERSON, C. J., and BOULDIN, and FOSTER, JJ., concur.