60 So.2d 56

Ex parte HERRIN.

6 Div. 258.

Supreme Court of Alabama.

June 19, 1952.

H. A. Entrekin and John H. Chapman, Cullman, for petitioner.

Beddow & Jones, Birmingham, for guardian ad litem.

BROWN, Justice.

This is an original application for mandamus filed by Mrs. Effie Herrin as general guardian of Dr. C. E. Herrin, a non compos mentis, to review the order of the circuit court in equity overruling her motion to remove Julian Bland as guardian ad litem, overruling her motion to remove Beddow & Jones as attorneys associated with the guardian ad litem, and overruling her motion for a monthly lump sum allowance for support of the ward. Bland was appointed guardian ad litem by the Probate Court of Cullman County upon the filing in that court of the accounts and vouchers by the general guardian for a partial settlement of such guardianship. Immediately upon his appointment Bland filed a petition to remove the administration of the guardianship to the Circuit Court of Cullman County, in Equity.

It appears from the averments of the petition and the other parts of the record attached thereto and made a part thereof that in the course of the hearing it developed that Beddow and Jones had been employed previously by Mrs. Edna Green, a daughter of said ward by a former marriage, to represent her and her son in respect to their alleged contingent interest in certain government bonds purchased by said ward while of sound mind, some of which were payable on their face to the said Dr. C. E. Herrin and at his death to.

said Edna Green. Other bonds were payable on their face to said Dr. C. E. Herrin and at his death to Charles E. Green, the son of said Edna Green, and the grandson of Dr. Herrin. These bonds had been retained by Dr. Herrin at all times in his possession and came into the possession of the general guardian upon her appointment by the probate court as the general guardian of his person and estate.

After the said bonds came into the possession of the general guardian, acting as such and in behalf of her ward, she presented them to the government with her endorsement thereon and they were cashed. As such guardian she invested the proceeds of said bonds in like government bonds payable to Mrs. Effie Herrin, as guardian of Dr. C. E. Herrin, a non compos mentis. The first mentioned bonds consisted of two G-Bonds of $5,000 each. The second batch consisted of five E-Bonds in the aggregate amount of $3,500. It further appears that at the time the aforementioned bonds were cashed and reinvested, the general guardian had in her possession G-Bonds in the aggregate sum of $10,000 payable to Dr. Charles E. Herrin and at his death to Mrs. Effie O. Herrin, which were not converted into cash and reinvested in bonds of like amount, tenor and effect.

It further appears that Beddow and Jones, as attorneys, had previously been employed by Mrs. Green to represent and advise her in respect to certain property,—an automobile and shares of stock in the Home Building & Loan Association, about which there was a controversy as to whether or not the property was the property of the Greens or Dr. Herrin, the income from which was due to be received and used for the support of Dr. Herrin as long as he lived.

In one or more of the objections to passing the accounts filed by the guardian in her application for partial settlement, it was alleged (to state the objections in substance and legal effect), that the guardian by cashing the G-Bonds, which were payable to the ward and to the Greens on his death, and in withholding the other bonds in which she was named, she exceeded her authority and was guilty of fraud

against the ward and his prospective heir Mrs. Green, she being his only child and next of kin who might take as such or as legatee under a last will.

In the motion to remove the guardian ad litem and his aiding counsel it is alleged that the guardian disqualified himself by employing legal counsel representing interests antagonistic to that of the ward and in allowing such counsel to urge and litigate through him as guardian ad litem such antagonistic interests. Likewise through their influence said attorneys urged objections to a monthly lump sum allowance, reducing to a minimum an allowance wholly inadequate to the ward's needs, to save the estate for the prospective heir. It is also asserted that the guardian ad litem disqualified himself under the statute when he admitted in his testimony that he felt the need of "able and experienced lawyers" to represent him as such guardian ad litem. On the basis of these averments made more fully in the motion to remove, petitioner rests her right to mandamus, requesting the removal of Bland as guardian ad litem and his legal aids.

Upon presentation of the original petition to this court, Livingston, C. J., Foster, Simpson and Stakely, JJ., concurred in the granting of the alternative writ—the rule nisi—to which Judge Powell made and filed his answer and return in which he states among other things: "The decree, or a part thereof, which was rendered by the Court at this hearing on January 26, 1951, is assigned by Attorneys H. A. Entrekin, Attorney for the General Guardian, in paragraph 4 of his petition to this Honorable Court as a basis for the writ of mandamus. That part complained of is as follows:

" 'And it being made known to the Court that the Honorable Roderick Beddow of Birmingham represented Mrs. Edna Green, a daughter of said Ward; and that he was and would be engaged in the trial of a case in the Circuit Court of Jefferson County, Alabama, for several days, the hearing is continued until March 19, 1951, at Ten o'clock A. M.'

"At this said hearing, on to-wit, January 26, 1951, it was within the knowledge of the Court, and it being an accepted fact by all concerned in said cause, that Mrs. Edna Green, a daughter of the Ward, was a client of the Law Firm of Beddow & Jones, and that the Firm of Beddow & Jones had been consulted by Mrs. Edna Green concerning this cause, previous to the appointment of the guardian ad litem, but, the continuance at this hearing was first asked in Court by Attorney Julian Bland, the guardian ad litem for the reason that Honorable Roderick Beddow could not be in Cullman on that date.

"When the cause was called for trial on March 19, 1951, Mr. H. A. Entrekin, Attorney for the General Guardian, announced in open Court, that Attorney John Chapman, an Attorney at the Cullman Bar, had been employed to assist him in representing the General Guardian, Mrs. Effie Herrin. · The Court proceeded to take evidence on the issues raised by the partial settlement and of the objections thereto and the motion to allow the Guardian Four Hundred ($400.00) dollars per month as maintenance for her ward, with Mr. H. A. Entrekin and Mr. John Chapman representing the Guardian, and Mr. Ernest Jones, Sr., a member of the Law Firm of Beddow & Jones, of Birmingham, Alabama, representing the Guardian Ad Litem. The hearing progressed until immediately after the noon adjournment, at which time the question arose in open Court in a discussion between the Lawyers involved in this cause, as to whose interest the Law Firm of Beddow & Jones were representing. It was stated at this time by Attorney Julian Bland, the guardian ad litem, that they wanted *to* record to show that Beddow & Jones represented the Guardian Ad Litem. Upon this request being made objections to the guardian ad litem's right to employ counsel were raised by the Attorneys for the General Guardian. The record indicates the proceedings which were had concerning this matter. The hearing continued through the afternoon, and at the end of the day the cause was continued until April 10, 1951.

"On April 10, 1951, Attorney John Chapman, and Attorney H. A. Entrekin, Attorneys for Effie Herrin, the General Guardian, of Dr. C. E. Herrin, a non compos mentis, filed a motion asking the Circuit Judge to decide two things, First: That the Guardian ad Litem be removed, Second: That the Attorneys of the Guardian ad Litem be removed. After the Court had rendered the decision overruling the motion to remove the guardian ad litem, and the Attorneys for the guardian ad litem, Mr. John Chapman, one of the Attorneys for the Guardian, asked the Court orally to rule on whether there was a necessity for an Attorney for the Guardian ad litem at this time. The Court stated at this point, that he would not say whether there is or is not a necessity until the thing is over, that he would merely stick to the statement that he had made at the beginning of the hearing. The statement referred to here is found in the Transcript page 31–32, which reads as follows:

" 'The Attorneys for the Guardian filed a motion which seeks the removal of the Guardian ad litem, and the removal of the Firm of Beddow & Jones as Attorneys for the Guardian ad litem. The Court and all Attorneys have held an informal conference regarding the facts which are alleged in the motion. All parties seem to be in agreement to the effect that the Guardian ad litem is a competent practising Attorney at the Cullman County Bar, and that the Firm of Beddow & Jones . represents, in addition to the Guardian ad litem, Mrs. Edna Green, a daughter of Dr. Herrin, an only prospective heir of the Estate of Dr. Herrin, other than the wife of the Ward, who is the Guardian, Mrs. Effie Herrin. The Firm of Beddow & Jones became interested in the proceedings through their employment by Mrs. Edna Green before the Guardian ad litem was appointed, and later they were employed by the Guardian ad litem, at the suggestion to the Probate Court (of) the necessity of appointment of a Guardian ad litem.

" 'Attorneys for the Guardian strenuously insist that the Guardian ad litem should not be allowed to employ the Firm of Bed-

dow & Jones for the purpose of this hearing. They insist that the interest of Mrs. Green, who has employed the Firm of Beddow & Jones, is adverse to the interest of the Guardian ad litem, and that the Guardian ad litem cannot properly represent the Ward, having as his counsel the Firm of Attorneys who represents an alleged adverse interest. The Court now offers the opportunity to the Attorneys for the Guardian to introduce any evidence which they desire to support the motion to remove the Guardian ad litem and the Attorneys for the Guardian ad litem, and will reserve the ruling on the motion until such evidence has been offered.

" 'It is agreed by all the parties, and their Attorneys that in the event this case, or any phase of it is taken to the Supreme Court, by either party, or anyone interested in the case, that any part of the pleadings, or all of the pleadings, or any part of the record, which any party to this cause desires to be placed in the record, may be copied into the record.'

\*  \*  \*  \*  \*  \*

"Second: The main issues involved in this cause are as follows: The alleged conversion of the Ward's property by the General Guardian; The alleged excessive expenditures of the Guardian of the Ward's estate, as evidenced by the Transcript page 16, in that the item of General expense Ten Thousand Four Hundred Eighty Eight ($10,488.00) dollars together with other items, which said general expense does not include nurses hire and hospitalization for the Ward. The Allegation that the Guardian committed a fraud on the Ward, the estate of the Ward, and the heirs of the Ward in the manner in which she handled bonds of the Ward. The allegation of the fraud is as follows; that the Ward before his being declared incompetent had purchased government G-bonds in the amount of Ten Thousand ($10,000.00) dollars 'Payable to Dr. C. E. Herrin and payable on death of Edna Green.' (Edna Green being the daughter of Dr. C. E. Herrin, and the only prospective heir to the estate, except the widow who is the General Guardian of Dr. C. E. Herrin). The Ward, before his being declared incompetent, had also pur-

chased government G-bonds in the amount of Ten Thousand ($10,000.00) dollars 'Payable to Dr. C. E. Herrin and payable on death to Effie Herrin'. (Effie Herrin being the widow of the Dr. and also the General Guardian.) The Ward had also, before being declared incompetent, purchased G-bonds and E-bonds in the aggregate of Thirteen Thousand Five Hundred ($13,500.00) dollars, 'Payable to Dr. C. E. Herrin and payable on death to Charles E. Green'. (Charles E. Green being the grandson of the Dr. and the son of Edna Green.) That Effie Herrin as Guardian of the Ward cashed all the government G-bonds and E-bonds which were not payable to her on death, that is, she cashed all bonds payable to the Dr. and payable on his death to the daughter and grandson, but, the Guardian retained the bonds payable to the Dr. and payable on death to her; that immediately after she cashed the bonds payable on death to the daughter and grandson, she repurchased the same type government bond, in the same amount, but 'Payable to Effie Herrin, as Guardian of the estate of Dr. C. E. Herrin'; that in order for her to make the sale of the original bonds and repurchase new bonds in the same amount and of the same type, that she had to pay out of the estate the amount of Four Hundred Forty ($440.00) dollars, because she had cashed the original bonds before their date of maturity. The guardian ad litem contends that the General Guardian, has changed the Ward's testamentary disposition, of that much of the Ward's estate, consisting of the government bonds in the aggregate of Twenty-three thousand five hundred ($23,500.00) dollars.

\*  \*  \*

"In the case at bar the prospective heir, Mrs. Edna Green, is not a party to this cause. She has no interest in the Estate of the Ward, until the Ward's death. The activities of the Guardian ad litem, and the Guardian ad litem's Attorneys, have appeared throughout the case, to be solely for the benefit of the Ward, and the Court has observed no conduct on the part of the Guardian ad Litem or the counsel for the Guardian ad Litem, calculated to injure the welfare of the Ward, or to impair his

estate in any manner. * * *" [Italics supplied.]

This return was subsequently amended by the Judge attaching his oath thereto. Petitioner controverted both the original and amended return by filing a replication thereto which was also sworn to by the petitioner. During his examination as a witness by Mr. Ernest Jones, the guardian ad litem testified:

"Q. * * * How long have you been in active practice? A. I practiced for a while before the war, approximately one year, spent 3½ years in the army, then came back here in November '45. I think I've been here ever since.

"Q. And you have been practicing since that time? A. Yes, sir.

"Q. Now, Mr. Bland, of course we know I am not disparaging your qualifications, but do you consider yourself, —are there many matters that come up that you would consider you need the benefit of the assistance and advice and aid of older and more experienced lawyers? A. Yes, sir, I don't think there has ever been a young lawyer that didn't.

"Q. In this matter, when it was presented, and you became acquainted with the questions involved, was it your honest judgment as a lawyer, that as Guardian ad Litem, to do justice to the Ward, that you required the help and assistance of an older and more experienced lawyer? A. Yes, sir.

"Q. And did you rely on that in requesting the assistance of Beddow & Jones? A. Yes, sir.

"Q. How many contested matters, involving fiduciary relationships and complicated settlements involving various items of the character involved in this matter here have you ever handled as a lawyer? A. I have never handled a case like this. Most of my practice has been criminal since I got back from the army. * * *"

Upon cross examination the testimony of this witness tended to show that Mr. Beddow was in Cullman on the day that Judge Griffith of the Probate Court appointed Mr. Bland as guardian ad litem. The witness stated, "From Judge Griffith's statement, I assume he was; I didn't see Mr. Beddow", but this statement was excluded from the record by the court. However Judge Powell refused to pass on the right of the guardian ad litem to employ counsel to assist him and the necessity therefor and overruled the motion of the attorneys for the general guardian to remove the guardian ad litem and his aiding attorneys.

Whatever may have been the origin of the office of guardian ad litem, there can be no doubt of the purpose and meaning of Chapter 5, Title 7, Code of 1940, embracing §§ 177 through 181. Section 177 provides

"In all cases, both at law and in equity, where infants or persons non compos mentis are made parties defendant to a complaint, bill, petition, or other proceeding, such infant or non compos mentis shall be defended by his general guardian, if he have one, who is not adversely interested to the infant or non compos mentis nor disqualified, but if he have no general guardian, or the general guardian is adversely interested or disqualified, he shall be defended by a guardian ad litem appointed by the court in which such cause is pending, unless otherwise provided; and the court or officer appointing guardians ad litem *shall in all cases select some person who is qualified to represent such infants or non compos mentis in the capacity of an attorney or solicitor,* and must not select or appoint any person who is related, either by blood or marriage within the fourth degree, to either the complainant, petitioner, plaintiff, or to the attorney or solicitor for such complainant, petitioner, or plaintiff, or to the judge or clerk of the court, or who is in any manner connected with such complainant, petitioner, or plaintiff, or with his attorney or solicitor."—[Italics supplied.]

We note that § 178, Title 7, Code of 1940, penalizes an appointing officer or judge who shall knowingly appoint any person as guardian ad litem for any infant

or non compos mentis in violation of the provisions of the preceding section.

Section 179, Title 7, Code of 1940, prohibits the attorney of one adversely interested in the matter pertaining to the interest of an infant or person non compos mentis from suggesting a person to be appointed as such guardian ad litem.

Section 180, Title 7, Code of 1940, confers on the court having jurisdiction of a suit in which such infant or incompetent is interested, the power and authority to ascertain a reasonable fee or compensation to be allowed and paid to the guardian ad litem for his services rendered in such case and to tax as a part of the costs in such suit and proceeding such item, "which is to be paid, when collected as other costs in the proceeding, to such guardian ad litem."

The statutes as to fees and costs are penal and must be strictly construed. Code of 1940, Tit. 11, § 1; Title 46, § 63. The statutes above referred to first appeared in the Code of 1907. Prior to that time provision for the appointment of guardians ad litem were meager and often depended upon the power of the court of equity to see that such minors be properly represented in a suit pending in the court.

Sims' Alabama Chancery Practice, § 314, p. 199, citing Code of 1907, §§ 4482–4483, [Code 1940, Tit. 7, §§ 177, 178], makes the following statement:

"The court must appoint some solicitor, however, so as to avoid the necessity for the guardian ad litem to employ counsel and the court must not knowingly appoint a relative of the plaintiff or of his solicitor, or of the judge or of the clerk, or any person connected with the plaintiff or his solicitor in any manner; and the court must not appoint upon the suggestion of the plaintiff or of his solicitor; nor must they offer suggestion; all of which is prevented by statutes supported by penalties enforceable at the suit of the infant either suing by next friend or after he becomes of age."

In Parker v. Parker, 99 Ala. 239, 244, 13 So. 520, 522, 42 Am.St.Rep. 48, this court observed: "The guardian ad litem of minor defendants in any cause is their responsible representative; and no one can properly represent an infant as guardian ad litem or as his attorney who has an engagement to represent an adverse interest, however slight."

In referring to the ruling of the court in declining to remove the guardian ad litem and his attorneys, the judge in his amended return—no doubt—prepared by counsel representing the guardian, as is usually done, states:

"The ruling of the Court on this specific proposition, being based on the holding in the cases of Glass v. Glass, 76 Ala. 368; Watters v. First National Bank of Mobile, [233 Ala. 227], 171 So. 280; Tit. 21, Sec. 15 of the 1940 Code of Alabama; 31 C.J., Page 1136, Sec. 285, and 43 C.J.S. [Infants], § 110, page 294, and Ex parte May, [254 Ala. 626], 49 So. 2d 551, and Ex parte McFry [219 Ala. 492], 122 So. 641. * * *"

In Glass v. Glass, 76 Ala. 368, decided at the December Term, 1884, long before the enactment of the present statutes dealing with the appointment of guardians ad litem, Justice Stone observed: "Reeves, the guardian ad litem, is described in the judgment entry of the Probate Court, as the attorney in fact of the infant wards. Infants, or minors, can not have an attorney in fact. A power of attorney made by an infant is absolutely void. Ware v. Cartledge, 24 Ala. 622; Philpot v. Bingham, 55 Ala. 435; Tyler on Infancy, 46–7. Reeves could not be the attorney in fact of the infants; nor, indeed, was he their appointed attorney in any sense. Guardians ad litem may employ attorneys, if the interests of the trust require; but neither such attorney, nor the guardian ad litem, has authority to receipt for, or satisfy the judgment that may be recovered for a minor represented by them. Possibly, the entry of satisfaction may be treated as a nullity, and execution sued out, notwithstanding such entry. For regularity's sake,

however, it would be better and more seemly, to have the order vacated, and possibly a revivor, before execution is sued out. Code of 1876, § 3174."

What was said in the above excerpt as to the right of the guardian ad litem to employ counsel was purely dictum and gratuitous. Such utterances are inapposite as authority in the face of the present statutes.

What was said in the case of Watters v. First Nat. Bank of Mobile, 233 Ala. 227, 171 So. 280, was in respect to a request or petition to the circuit court to allow the guardian ad litem to employ the petitioner to represent the guardian ad litem and seems to have been influenced by the early decisions in the case of Andrews, Adm'r v. Hall, 15 Ala. 85, and Glass v. Glass, 76 Ala. 368, without reference to the statute in force at that time. When the application by the guardian ad litem and his prospective counsel was made to the presiding judge of the circuit court to employ said counsel to aid him and represent him in the matter for which he had been appointed as guardian ad litem, the said petitioner agreed with the circuit judge that the matter of the fee allowed the guardian ad litem would be left to his discretion. This statement was made in the dissenting opinion by the writer, concurred in by Chief Justice Anderson on the second appeal. Frazer v. First Nat. Bank of Mobile, 235 Ala. 252, 178 So. 441, 126 A.L.R. 1 (see 235 Ala. 261, 178 So. 448, 449, for dissenting opinion). The circuit court at the conclusion of the hearing on the second appeal fixed the fee for the guardian ad litem at $8,000 and he appealed, repudiated his agreement and was allowed a fee by a divided court here of $35,000, without regard to the statutes. Code of 1923, §§ 8256–8259, Code 1940, Tit. 7, §§ 177–180.

We find nothing in the citations 31 C. J. p. 1136, § 285 and 43 C.J.S., Infants, § 110, page 294, in conflict with the authoritative holdings quoted above. Also Ex parte May, 254 Ala. 626, 49 So.2d 551, and Ex parte McFry, 219 Ala. 492, 122 So. 641, are wholly inapposite.

Code of 1940, Title 21, § 15, relating to lunacy proceedings before the probate court in cases wherein the alleged lunatic is confined in an asylum, which requires the appointment of a guardian ad litem and confers on such guardian ad litem the authority to employ counsel to represent the lunatic, is likewise inapposite, except that it indicates a legislative policy that where extra legal services are to be engaged the statute must expressly so authorize. No such authority is given in Article 5, Title 7, Code of 1940, from which we have quoted above.

The record shows without dispute that the general guardian collected the government bonds from the government itself. The mere fact that the government cashed the bonds is evidence that the general guardian had the legal right to cash the said bonds. She invested the proceeds in like bonds which she took in her name as guardian of Dr. Herrin.

"It is the settled law of this state that a guardian has the power to dispose of the personal estate of his ward, including the transfer of choses in action, without an order of court. This power is said to be coextensive with that of an executor or administrator. Echols v. Speake, 185 Ala. 149, 64 So. 306, Ann.Cas.1916C, 332; Steinhart v. Gregory, 176 Ala. 368, 58 So. 266." Bank of Guntersville v. United States Fidelity & Guaranty Co., 201 Ala. 19, 75 So. 168, 169; Reynolds v. Danko, 134 N.J.Eq. 560, 36 A.2d 420.

To constitute actionable fraud, it must result in damage. Code of 1940, Tit. 7, § 107; Mobile Bldg. & Loan Ass'n v. Odom, 232 Ala. 19, 166 So. 698. The answer and return of the respondent, shows that the legal title to the bonds was in Dr. Herrin and that Mrs. Green is not a party to this proceeding and has no interest in the bonds which the general guardian cashed and reinvested. Smith v. Eshelman, 235 Ala. 588, 180 So. 313; Clark v. Young, 246 Ala. 529, 21 So.2d 331; Hicks v. Meadows, 193 Ala. 246, 69 So. 432; Reynolds v. Danko, supra.

Notwithstanding the statement in the Judge's return that the issues were all presented for the benefit of the ward, the rec-

ord shows that additional legal counsel was employed by the general guardian, that the sureties on her bond filed application to be relieved and that she was required to give a new bond as guardian in a surety company. Moreover the conclusion is inescapable that the issues formed by the pleadings show a studied effort to litigate the alleged contingent interest of the heir apparent through the guardian ad litem and to lay a foundation for the allowance of counsel's fees to be taxed as costs against the estate of the ward. If the general guardian is guilty of such maladministration of the trust as to threaten the destruction of the contingent interest of the Greens, they should proceed in their own right and at their own expense, as they have the right to do. Ussery v. Darrow, 238 Ala. 67, 188 So. 885; Braley v. Spragins, 221 Ala. 150, 128 So. 149, 154; Badham v. Johnston, 239 Ala. 48, 193 So. 420; Mudd v. Lanier, 247 Ala. 363, 376, 24 So.2d 550.

The guardian ad litem, the sole representative of the ward, should not allow the ward's interest to be embarrassed at the instance of third parties who are not parties to the proceeding. Also if they have a litigable interest, the door of a court of equity is open, where they may enter and litigate at their own peril. Badham v. Johnston, supra; Hogian v. Moore, 219 Ala. 497, 122 So. 824.

While Mrs. Green was not a party, the record shows she was present on all occasions seeking to get continuances when her counsel was not available for the trial and on the last occasion the guardian ad litem secured the continuance because of the absence of her counsel.

It is a matter of common knowledge that trust estates are subjected to diminishing processes of litigation which create costs and expenses to the detriment of cestui que trust or ward's estate and interests. Such litigation fomented and encouraged by a guardian ad litem appointed under the statutes, in the light of the testimony, disqualifies such guardian ad litem from acting in the interest of the non compos mentis. I am, therefore, of opinion that the circuit court erred in refusing to remove the guardian ad litem.

The record shows that the court heard the testimony of competent witnesses in respect to the allowance for the support of the non compos mentis and this matter is always open for revision by the circuit court having jurisdiction of the administration of the estate. We find no error in overruling the motion for a lump sum allowance per month.

It results that the writer is of opinion that the circuit court erred in refusing to remove the guardian ad litem and to that extent the peremptory writ of mandamus should be awarded unless the court on being advised of this opinion makes an appropriate order.

PER CURIAM (concurring in part).

■ The majority of the Justices participating are of the opinion that in certain circumstances approval may be given of the employment of associate counsel by the guardian ad litem to assist him in properly representing the interests of his ward and the trust committed to him. Watters v. First Nat. Bank of Mobile, 233 Ala. 227, 171 So. 280.

■ Accordingly, we do not think the record reflects that disregard of fiduciary duty on the part of the guardian ad litem to warrant his removal and to that extent the mandamus will be denied.

■ However, the guardian ad litem must stand impartial before all contesting parties in all proceedings in which his ward or the trust estate is interested and must direct his representation solely to the benefit of his ward and the trust estate. Being so, such associate counsel the employment of which the court may authorize, must likewise entertain the same status and must not represent adverse interests.

■ The record here discloses that the attorneys the guardian ad litem has attempted to employ, presumably at the expense of the trust estate, do not entertain that impartial position, but are the retained counsel of parties litigating title to property now reposed in the trust estate, which litigation is being contested by the ward's general guardian. It therefore clearly appears these attorneys do not entertain that neu-

tral position with respect to the parties litigant and the ward's estate to authorize their representation of that estate. So considered, the writ will issue, requiring the respondent judge to disallow their employment as associate counsel of the guardian ad litem.

Let the writ issue to the extent above indicated.

LIVINGSTON, C. J., and FOSTER, LAWSON, SIMPSON and STAKELY, JJ., concur.

GOODWYN, J., not sitting.